**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

KENARD PITNEY, on behalf of himself and
all others similarly situated,

       *Plaintiff*,

   v.

CITY OF CHESTER, ET AL.,

       *Defendant*.

Case No. 2:19-cv-00799

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

    Plaintiff, Kenard Pitney, by and through counsel, hereby moves this Court, pursuant to

Federal Rule of Civil Procedure 23, to certify this action as a class action.  In support thereof,

plaintiff submits the accompanying Memorandum of Law.

Dated:  September 16, 2020

                Respectfully submitted:

                LAW OFFICES OF PATRICK G. GECKLE, LLC

                /s/ Patrick Geckle
                PATRICK GECKLE
                1515 Market Street, Suite 1200
                Philadelphia, PA  19102
                215-735-3326

                FELDMAN SHEPHERD WOHLGELERNTER
                TANNER WEINSTOCK & DODIG, LLP

                _____
                ALAN M. FELDMAN

1

EDWARD S. GOLDIS
ANDREW K. MITNICK
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
215-567-8300

Attorneys for Plaintiff and the Class

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................ ii.

I.   INTRODUCTION ....................................................................................2

II.  STATEMENT OF THE CASE AND CLASS DEFINITION ....................................3

    A.  The City of Chester's Unconstitutional Strip Search Policy....................3

    B.  Plaintiff Kenard Pitney's Arrest and the Violation of His
         Constitutional Rights ...............................................................6

    C.  Class Definition...................................................................8

III. ARGUMENT ...........................................................................................11

    A.  Defendant's Strip Search Policy is Unconstitutional............................11

    B.  Legal Standards Governing Class Certification .................................13

        1.  The Requirements of F.R.C.P. 23(a)........................................14

            a  Numerosity ...........................................................15

            b.  Commonality.........................................................16

            c.  Typicality ............................................................17

            d.  Adequate Representation ...........................................18

        2.  The Requirements of F.R.C.P. 23(b) .......................................20

            i.  Plaintiff Satisfies the Requirements of Rule 23(b)(2) .............20

            ii. Plaintiff Satisfies the Requirements of Rule 23(b)(3) .............20

IV.  CONCLUSION......................................................................................25

# TABLE OF AUTHORITIES

**CASE**                                                      **Page**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997 .................................20, 24

*Buzzarro v. Ocean County*, 2009 WL 1617887 at *12 ..........................................16, 21, 22

*Blackburn v. Snow*, 717 F.2d 556, 561, n. 3 (1st Cir. 1985)..................................................3

*Blihovde v. St. Croix Cty.*, Wis., 219 F.R.D. 607 (W.D. Wis. 2003)................................23

*Boyle v. Progressive Specialty Ins. Co.*, 326 F.R.D. 69, 83 (E.D. Pa. 2018)....................15

*Bynum v. Dist. of Columbia*, 217 F.R.D. 43 (D.D.C. 2003) ...............................................23

*Calvin v. Sheriff of Will County*, 2004 WL 1125922 (N.D. Ill. May 17, 2004)................23

*Cantley v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 771 F.3d 201, 208
(4th Cir. 2014)..........................................................................................................................11

*Chapolini v. Capodanno*, 2019 WL 4242508 at *12 (E.D. Pa. Sept. 5, 2019)...................9

*City Select Auto Sales Inc. v. BMW Bank of N. Am., Inc.*, 867 F.3d 434, 439
(3d Cir. 2017 ..........................................................................................................................15

*Dietrich v. Bauer,* 192 F.R.D. 127 (S.D.N.Y. 2000) .........................................................20

*Doan v. Watson*, 2002 WL 31730917 (S.D. Ind. December 4, 2002) ...............................23

*Dodge v. County of Orange*, 226 F.R.D.177 (S.D.N.Y. 2005)....................................17, 23

*Eddleman v. Jefferson Cty.*, 96 F.3d 1448 (6th Cir. 1996) ................................................23

*Fate v. Charles*, 24 F. Supp. 3d 337, 346 (S.D.N.Y. June 5, 2014) .............................9, 12

*Florence v. Board of Chosen Freeholders of Cty. Of Burlington*, 566 U.S.
318 (2012)........................................................................2, 3, 9, 11, 12, 13, 16, 21, 22, 23,

*Fonder v. Sheriff of Kankakee Cty.,* 823 F.3d 1144, 1149 (3rd Cir. 2016)........................11

*Gallagher v. Green*, 2016 WL 3213346, *5 (E.D. Pa. June 10, 2016).............................13

*Gulf Oil Co v. Bernard*, 452 U.S. 89, 100 (1981)..............................................................13

**CASE**                                                                                      **Page**

*Gwiazdowski v. County of Chester*, 263 F.R.D. 178,189 (E. D. Pa. 2009)..................20, 21

*Harlan v. Transworld Sys., Inc.*, 302 F.R.D. 319, 328, n. 14 (E.D. Pa. 2014) .................16

*Haxworth v. Blinder, Robinson & Co. Inc.,* 980 F.2d 912, 923 (3d Cir. 1992)................18

*Hinkle v. Beckham County Board of Commissioners*, 962 F.3d 1204 (10th Cir. 2020 ......12

*Holland*, 2013 WL 968295 at * 8 (N.D. Cal. Mar. 12, 2013)...........................................11

*In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 139 (D.N.J. 1984)............................18

*In re DVI, Inc. Sec. Litig.,* 639 F.3d 623, 630 (3d Cir.2011)...........................................20

*In re Hydrogen Peroxide Antitrust Litigation,* 552 F.3d 305, 320
(3d Cir. 2008)....................................................................................................14, 20, 21

*In re NASDAQ Mkt. Makers*, 169 F.R.D. 473, 517......................................................20

*In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006) ...........................23

*In re Nat'l Football League Players Concussion Injury Litig.,* 821 F.3d 410, 428
(3d Cir. 2016)....................................................................................................18

*In re Prudential Ins. Co. Am. Sales Prac. Litig.,* 148 F.3d 283, 308 (3d. Cir. 1998)........13

*In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001).........23

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004).......................19

*J.B. ex rel. Benjamin v.  Fassnacht*, 801 F.3d 336, 341-42 (3d Cir. 2015) ........................7

*Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1986) .......................................20

*Johnson v. District of Columbia*, 248 F.R.D. 46 (D.D.C. 2008) ......................................23

*Johnston* v. *HBO Film Management, Inc.*, 265 F.3d 178, 183 (3d Cir. 2001) .................13

*Jones v. Murphy*, 256 F.R.D. 519 (D. Md. 2009) .........................................................23

*Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982) ........................................................19

**CASE**                                                                                 **Page**

*Mack v. Suffolk County*, 191 F.R.D. 16 (D. Mass. 2000) ..................................23

*Maneely v. City of Newburgh*, 256 F. Supp. 2d 204 (S.D.N.Y. 2003)..............................23

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 600 (3d Cir. 2012) ................................20

*Marcus v. BMW of N. Am., LLC,* 687 F.3d 583, 597–98 (3d Cir. 2012) ..........................16

*Marriott v. County of Montgomery*, 227 F.R.D. 159 (N.D.N.Y. 2005), aff'd, 2005 WL 3117194 (2d Cir. 2005)........................................................................17, 22, 23

*Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1272 (7th Cir. 1984) ............................7

*McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 250 (E.D. Pa. 2006)…………...  13, 17

*Mitchell v. County of Clinton*, 2007 WL 1988716 (N.D.N.Y. July 5, 2007)....................23

*Monell v. Dep't. of Soc. Svcs. of City of N.Y.*, 436 U.S. 658 (1978)..................................11

*Montgomery Cty., Pa. ex rel. Becker v. MERSCORP, Inc.*, 298 F.R.D. 202, 209, 211 (E.D. Pa. 2014)...........................................................................................................13, 17

*Moyle v. County of Contra Costa*, 2007 WL 4287315 (N.D. Cal. Dec. 5, 2007)...............3

*New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)..............................................................................................................19

*Nilsen v. York County*, 219 F.R.D. 19 (D. Me. 2003)........................................................23

*Parkell v. Danberg*, 833 F.3d 313, 327 (3d Cir. 2018).........................................................3

<u>*People v. Hall*</u>, 10 N.Y.3d 303, 306-07, 856 N.Y.S.2d 540, 886 N.E.2d 162 (2008) .......13

*Phillips v. Sheridan Cty. Sheriff's Office*, 2015 WL 13689047, at *11 (D. Wyo. May 4, 2015)...............................................................................................................11

*Pitney v. City of Chester*, --- F.Supp.3d ----, 2020 WL 2571100 at *3, 13, 14 (E.D. Pa. 2020)..................................................................................... 4, 9, 11-13

*Sanchez v. County of Essex*, No 2:15-CV-3391 (D.N.J. 2015)....................................11, 23

*Scott v. University of Delaware*, 601 F.2d 76, 84 (3d Cir. 1979) ......................................18

**CASE**                                                    **Page**

*Seawell v. Universal Fidelity Corp.*, 235 F.R.D. 64 (E.D. Pa. 2006) ...............................22

*Smith v. Montgomery County*, 573 F. Supp. 604 (D. Md. 1983) ......................................23

*Spinner v. City of New York*, 2003 WL 23648356 (E.D.N.Y. Oct. 10, 2003) ..................23

*Sloley v. VanBramer*, 945 F.3d 30, 38 (2nd Cir. 2019) .....................................................13

*Streeter v. Sheriff of Cook County*, 256 F.R.D. 609 (N.D. Ill. 2009)................................23

*Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ...............................................15

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 305 (3d. Cir. 2011)......................................14, 20

*Sutton v. Hopkins County*, 2007 WL 119892, *4 (W.D. Ky. Jan. 11, 2007)....................17

*Tardiff v. Knox County*, 365 F.3d 1 (1st Cir. 2004) ..........................................................23

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551 (2011) ..................16

*Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 399 (D.N.J. 1998).......................22

*Weiss v. York Hosp.*, 745 F.2d 786, 808 (3d Cir. 1984) ....................................................15

*Wolgin v. Magic Marker Corp.,* 82 F.R.D. 168, 176 (E.D. Pa. 1979) .........................18, 22

*Young v. County of Cook,* 2007 U.S. Dist. LEXIS 31086 at *15
(N.D. Ill. Apr. 25, 2007) .....................................................................................................17


**Rules, Regulations, Statutes**

42 U.S. Code §1983 .......................................................................................................11, 12

F.R.C.P. 23(a) ..................................................2, 13, 14, 15, 16, 17, 18, 19, 21,

F.R.C.P. 23(b)(2) ...........................................................2, 13, 16, 19, 20, 22, 23

2 H. Newberg, NEWBERG ON CLASS ACTIONS (4th ed. 2002) ("NEWBERG")
§7.22 at 70-71 ..............................................................................................................14, 18

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KENARD PITNEY, on behalf of himself and
all others similarly situated,

   *Plaintiff*,

  v.

CITY OF CHESTER, ET AL.,

   *Defendant*.

Case No. 2:19-cv-00799

### MEMORANDUM OF LAW IN SUPPORT OF
### PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff Kenard Pitney, by and through his counsel, respectfully submits this memorandum of law in support of his Motion for Class Certification pursuant to F.R.C.P. 23(a) and 23(b)(2).

## I.  INTRODUCTION

This civil action derives from a blatant violation of plaintiff Kenard Pitney's constitutional rights under the Fourth Amendment. On May 18, 2018, Mr. Pitney was the subject of a questionable arrest by defendant City of Chester's Police Department ("CPD") while he was a patron at Harrah's Casino in Chester, Pennsylvania.

After being transported to the Chester Police station, Mr. Pitney was processed, strip searched and subjected to a visual body cavity search by one of defendant's officers and placed in a holding cell. The unnecessary and illegal strip search and visual body cavity search was mandatory under a policy adopted by defendant. (*See* Exhibit "A", CPD Directive No. 35). After approximately 90 minutes at the Chester Police station, Mr. Pitney was released and issued a summons for public intoxication; a charge that was later dismissed on July 19, 2018.

Defendant's strip search policy unquestionably violates the Fourth Amendment's prohibition against unreasonable searches. In response to defendant's unsuccessful bid for summary judgment, this Honorable Court concluded that defendant's strip search policy was neither permissible under the Supreme Court's decision in *Florence v. Board of Chosen Freeholders of Cty. Of Burlington*, 566 U.S. 318 (2012), nor did it comply with the general protections prescribed by the Fourth Amendment. (*See* Exhibit "B", Memorandum Opinion of the Honorable Paul S. Diamond at p. 13).

This lawsuit, originally filed as an individual action, was later amended with permission of the Court to include claims of a proposed class of similarly situated individuals who have each been subjected to unlawful strip searches as a result of defendant's unconstitutional policy. (*See* Exhibit "C", Amended Class Action Complaint). Plaintiff now seeks class certification for all individuals charged with summary and misdemeanor offenses, who were victims of the defendant's unconstitutional strip search policy.

## II.   STATEMENT OF THE CASE AND CLASS DEFINITION

### A.   The City of Chester's Unconstitutional Strip Search Policy

At the heart of this case lies defendant's longstanding unconstitutional strip search policy, which is detailed in defendant's Directive No. 35. Over 25 years ago, the City of Chester adopted its unconstitutional strip search policy and has been subjecting detainees placed in holding cells to these illegal, humiliating and degrading violations, without exception, for the ensuing decades. Not a moment's consideration was given to whether the reasonable suspicion necessary to justify

2

each specific strip search even existed.[1]  This invasive and demeaning body-cavity search[2] was and still is indiscriminately performed on every individual who is to be placed into one of the CPD's holding cells, irrespective of reasonable suspicion or the fact that defendant's holding cells do not qualify as a general prison population under *Florence* and its progeny.

These extremely invasive searches, which include a search of the arrestee's genitalia and anus, are routinely performed by defendant despite the absence of any suspicion that the arrestee may be carrying a weapon or contraband.  Such constitutionally impermissible searches are mandated by the City of Chester and its police department pursuant to CPD Directive No. 35.  (*See* Exhibit "A").  As this Honorable Court recognized in its Memorandum Decision denying defendant's Motion for Summary Judgment, CPD Directive No. 35:

> . . . instructs officers to "'strip search' . . . [a]ny person, male or female, who is charged by the Chester Police . . . with a violation of law which will require that person to be placed in a locked cell *or* having contact with others in custody."  All cells are monitored by the use of video cameras.  Under the City policy, police must conduct a strip search of a person placed in a cell, regardless of whether there is reasonable suspicion to believe he has contraband.

*Pitney v. City of Chester*, --- F.Supp.3d ----, 2020 WL 2571100, *3 (E.D. Pa. 2020)(internal citations omitted).  (*See* Exhibit "B" at p. 6).

Plaintiff deposed Acting Commissioner Steven Gretsky, a longstanding member of the CPD who served as defendant's Rule 30(b)(6) designee witness.  During his deposition, Commissioner Gretsky testified that "Directive 35 is our search policy in reference to when

---

[1] In fact, defendant's Rule 30(b)(6) designee, who is defendant's acting police commissioner and has spent all 18 years of his law enforcement career with the Chester police, could not even explain the reasonable suspicion standard.  (*See* Exhibit "D", deposition of Steven Gretsky at pp. 108-109).

[2] Strip search "generally refers to an inspection of a naked individual, without any scrutiny of the subject's body cavities."  Whereas "(a) 'visual body cavity search' extends to visual inspection of the anal and general areas" and "(a) 'manual body cavity search' includes some degree of touching or probing of body cavities."  *Parkell v. Danberg*, 833 F.3d 313, 327 (3d Cir. 2018)(quoting *Blackburn v. Snow*, 717 F.2d 556, 561, n. 3 (1st Cir. 1985)).

individuals are arrested," and confirmed that it is a mandatory policy that must be followed by all

CPD officers.   (*See* Exhibit "D", deposition of Steven Gretsky at p. 57).   Remarkably,

Commissioner Gretsky conceded that Directive 35 is devoid of *any* consideration of an individual

arrestee's Fourth Amendment rights:

> Q.  Is there anything in Directive 35 that discusses protecting the
> Fourth Amendment rights of arrestees?
>
> A.  No.

(*Id*. at p. 127).

Commissioner Gretsky testified that Directive No. 35 was applied uniformly to all

individuals who were arrested and placed in a holding cell: "If you - - if you are arrested and you

are brought into our cell block, you are getting searched."  (*Id*. at p. 104).  Commissioner Gretsky

further testified:

> Q.  …  Listening to your testimony and talking about the need for -
> - for the strip search, going back to Directive 35, your testimony all
> along has been that everyone going into the cell block is getting strip
> searched, no matter what.  Correct?
>
> A.  Correct.
>
> Q.  The officers involved, the turnkey, nobody is giving any
> consideration into the individual's background before they are strip
> searched. If they are going in the cell block, they're getting strip
> searched; correct?
>
> A.  Correct.

(*Id*. at pp. 153-154).  This policy was applied uniformly even though an individual may be going

into an empty cell.  (*Id*. at p. 156).

In what amounts to a blatant disregard for the protections of the Fourth Amendment,

Commissioner Gretsky explained that under the mandates of CPD Directive No. 35, "reasonable

suspicion" to perform a strip search exists simply by virtue of an individual being arrested, charged

and placed in defendant's cell block:

> Q. . . . After a person has already been arrested and they are brought into the police station, do you know what the reasonable suspicion standard is, as it relates to performing a strip search on a person who has already been arrested?
>
> A. From my experience, once they are at the police station, and once they are in the cell block, and they are being charged, that's when the search is being - - going to be conducted. That would be my answer to that question.

(*Id*. at pp. 108-109). Adding additional insult to injury, this humiliating, demeaning and invasive

strip search is carried out without any regard to the specific individual's history or conduct:

> Q. And that's a - - and that's a good point because there are people who are also arrested, who aren't real bad guys. It's someone who made a stupid mistake at one moment in time without a history. And they're getting thrown into one of these cells and getting stripped searched. Correct?
>
> A. Correct.
>
> **Q. So there are people who are nice guys, no history of criminal activity, and they make a mistake and they commit a summary offense. They get arrested and they're subjected to a strip search?**
>
> **A. In the City of Chester, correct.**

(*Id*. at p. 157)(emphasis added). Defendant's indiscriminate use of invasive strip searches is

precisely the type of unreasonable search the Fourth Amendment was designed to prevent.

**B.      Plaintiff Kenard Pitney's Arrest and the Violation of His Constitutional Rights**

On May 18, 2018, Mr. Pitney was the subject of a questionable arrest by defendant City of

Chester's Police Department while he was a patron at Harrah's Casino in Chester, Pennsylvania.

At approximately 9:30 p.m., Mr. Pitney exited the casino and approached the valet in the casino

parking lot.  He explained to the valet that he simply wanted to retrieve some personal items from his car.  Mr. Pitney walked to where his vehicle was parked and waited for the valet to arrive with his keys.  After waiting for a few minutes, a Harrah's security guard approached Mr. Pitney and advised him that the valet was not going to provide him with the keys to his vehicle as the valet believed it would be best for Mr. Pitney to either call a cab or Uber, or make other arrangements to get home.

Mr. Pitney explained to the security guard that his plan was to call a friend to drive him home.  However, he needed to retrieve some personal belongings from his vehicle.  The security guard refused to unlock Mr. Pitney's vehicle, so Mr. Pitney asked to speak with a supervisor. Shortly thereafter, a supervisor arrived and also refused Mr. Pitney's request to access his vehicle to retrieve his personal items.  Mr. Pitney asked the supervisor to call the police.

The Chester Police were on scene within approximately five minutes.  Mr. Pitney happened to be on his telephone when they arrived.  When he requested a few more minutes to speak with his fiancé about arranging a ride home the officers knocked plaintiff's phone out of his hand and placed him in handcuffs.  Mr. Pitney was subsequently transported to the City of Chester police station.

While at the Chester Police station, Mr. Pitney was processed, strip searched by one of defendant's officers and placed in a holding cell.  During the strip search, Mr. Pitney was required to disrobe and move his genitals around for inspection.  Defendant's strip search procedure, applied uniformly to all persons,[3] also entails detainees placing their hands against the wall, spreading the cheeks of their exposed buttocks, bending down and coughing.  The strip search

---

[3] Commissioner Gretsky was also defendant's 30(b)(6) designee relative to how strip searches are conducted.  (*See* Exhibit "D", Gretsky-1).  Commissioner Gretsky provided a step-by-step description of the methodical strip search process to which CPD arrestees were and still are subjected. (*Id.* at pp. 63-67).

process has been characterized by this and other Circuit Courts as being "an offense to the dignity of the individual," "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing and repulsive," "signifying degradation and submission."  *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1272 (7th Cir. 1984); *J.B. ex rel. Benjamin v.  Fassnacht*, 801 F.3d 336, 341-42 (3d Cir. 2015). This humiliating display was also broadcast on closed-circuit television. Mr. Pitney was subjected to this strip search because it was mandatory under CPD Directive No. 35.  No effort was made to determine whether there was reasonable suspicion to believe that Mr. Pitney was hiding a weapon or contraband.  Much to the contrary, as recognized by this Honorable Court, Mr. Pitney was lightly clad in clothing and had previously been patted down by the police – revealing no weapons or dangerous implements.  (*See* Exhibit "B" at p. 16).  There is also no dispute that Mr. Pitney was never placed, nor was he going to be placed in the general population of a prison.  In fact, Mr. Pitney was released from custody and issued a summons for public intoxication within 90 minutes of arriving at defendant's police station.  The public intoxication charge was subsequently dropped on July 19, 2018.

C.    **Class Definition**

Plaintiff proposes the following class definition:

> All persons who have been (1) detained in a holding cell at the City of Chester Police Department (2) as a result of being arrested and/or charged with summary offenses, civil enforcement offenses, child support enforcement arrears, traffic offenses, petty disorderly offenses, disorderly persons offenses, misdemeanors, contempt proceedings, failure to pay financial fines, penalties and/or costs in like matters as set forth above; and/or failure to appear at any court proceedings on like matters as set forth above; and (3) who were strip-searched upon their entry into detainment and/or custody and/or were strip-searched prior to an appearance before a judge or judicial officer who had the authority to release the person as referred to above from detainment and/or custody and (4) the strip-search was conducted and/or performed according to the City of Chester's blanket strip search policy, that is, without reasonable

> suspicion based on objective and articulable facts that the aforesaid person or persons possessed weapons and/or contraband.  The class includes persons who were strip searched on or after February 25, 2017 and extends to the date on which the City of Chester and the Chester Police Department are enjoined and/or cease to strip-search the class of persons referred to above.

In Mr. Pitney's case – and in the cases of the proposed class members – all were arrested and charged with minor offenses, including summary offenses or misdemeanors.  They were subjected to invasive strip searches *before* receiving the opportunity to appear before a judicial officer for a preliminary arraignment.[4] None of the class members were being placed by defendant in a general prison population; instead, they were simply being held in what this Honorable Court characterized  as merely an "administrative facility:"

> The Chester Police Headquarters is not a prison, but an administrative facility with eight "holding" cells. See Chapolini v. Capodanno, 2019 WL 4242508, at *12 (E.D. Pa. Sept. 5, 2019) (principles discussed in *Florence* inapposite to police station strip search); Fate v. Charles, 24 F. Supp. 3d 337, 346 (S.D.N.Y. June 5, 2014) ("An ordinary misdemeanor arrest is not sufficient for these purposes.  Instead, to justify strip searching a misdemeanor arrestee at a police station, an officer must have reason to suspect that the specific arrestee is concealing weapons or other contraband.").

(*See* Exhibit "B"at p. 14).  Defendant performed its strip searches before placing the arrestees in a holding cell and before the arrestee could be brought before a judge - a stage in the process when defendant had absolutely no idea whether the arrestee would ever be transferred to the general population of a prison.[5]  Since the Chester Police Station does not qualify as a general prison population under *Florence*, and the strip searches were performed before defendant knew whether

---

[4] Commissioner Gretsky testified that the strip search occurs before the arrestee is even processed.  The arrestee is later processed and taken before a judge when the paperwork is ready.  (*See* Exhibit "D" at p. 67).  Those individuals charged with summary offenses would be released without even needing a preliminary arraignment.

[5] Defendant would have no idea whether the arrestee would be required to post bail and whether bail would be posted before the arrestee could be transferred to a prison.  Commissioner Gretsky testified that those charged with misdemeanors could post bail and avoid being transferred to prison.  (*See* Exhibit "D" at pp. 93-95).  Those individuals charged with summary offenses would not be transferred to prison.  Rather, they would be issued a summons and released without ever being transferred to a prison's general population.

8

the arrestees would be committed to the general population of a prison, defendant was legally required to have a reason to suspect that the specific arrestee was hiding weapons or contraband before engaging in a strip search. *Fate*, 24 F. Supp. 3d at 346.

Defendant's mandatory strip search policy unlawfully eliminated the reasonable suspicion standard from the strip search equation. All arrestees in the proposed class were arrested for summary and misdemeanor offenses and subjected to an invasive strip search without any consideration of their prior criminal record (or lack thereof), the circumstances underlying their arrest or the potential criminal charges they faced. If the arrestee was to be placed in a holding cell, he or she was strip searched. Even juveniles arrested for summary or misdemeanor offenses were subjected to the same violative strip search. (*See* Exhibit "D" at p. 81).

Plaintiff sought to identify individuals who were arrested and detained by the CPD for summary and misdemeanor offenses. Discovery has revealed numerous class members and the list continues to grow as a result of defendant's ongoing application of its unconstitutional strip search policy. Defendant was served with "Plaintiff's First Request for Production of Documents Directed to Defendant City of Chester." (*See* Exhibit "E", Plaintiff's First Request for Production of Documents). Plaintiff limited those requests to individuals who were arrested by the City of Chester Police Department, dating back to February 25, 2017, for summary or misdemeanor offenses, placed in a holding cell at the City of Chester Police Department (or another facility owned or operated by the Chester Police) and *who were not transferred or intended to be transferred to a general prison population.* (*Id*. at p. 2). In response, defendant provided, *inter alia*, a list of 1,789 names of individuals it had gathered who presumably satisfied those criteria and belong in the proposed class. (*See* Exhibit "F", CHESTER 12021-12060, Inmate Classification-Summaries, M1, M2, M3). Based on Commissioner Gretsky's testimony, each of

the 1,789 identified individuals would have been strip searched without determining whether reasonable suspicion existed.[6]

### III.   ARGUMENT

**A.**   **Defendant's Strip Search Policy is Unconstitutional**

In its landmark decision in *Monell v. Dep't. of Soc. Svcs. of City of N.Y.*, 436 U.S. 658 (1978), the United States Supreme Court established circumstances under which a § 1983 constitutional tort claim may proceed against municipalities like the City of Chester:

> [I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id*. at 698.  In filing suit on his own behalf and on behalf of a class of similarly situated individuals, plaintiff asserts that defendant is liable under *Monell* because, in carrying out CPD Directive No. 35, defendant violated his Fourth Amendment rights and those of the class members.

While seeking summary judgment, Defendant previously argued that no constitutional violation occurred because its policy was permissible under the United States Supreme Court's decision in *Florence v. Board of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318 (2012).[7] This Honorable Court disagreed, finding that defendant's policy failed to comply with either *Florence*, specifically, or the Fourth Amendment, generally:

---

[6] It is anticipated that defendant's opposition to the instant motion will rely on a present-day analysis of arrest records to create a "reasonable suspicion" it intends to apply retrospectively – despite the fact that no such analysis was performed by defendant *before* conducting the unlawful strip searches.  Defendant's revisionist history defense does not make its strip searches any less unconstitutional.  It would be no different if the police conducted a warrantless search of someone's home that produced significant evidence.  Conducting a retrospective analysis a year later to determine whether a warrant would have been issued had the police actually applied for one does not render the unconstitutional warrantless search lawful after the fact.

[7] Defendant also asserted that plaintiff's individual claims should be dismissed on the ground that there was reasonable suspicion to conduct a strip search.  Judge Diamond disagreed, stating that "[b]ecause a jury could find that the search was unsupported by reasonable suspicion, I may not grant summary judgment on that ground."  Id. at *4.

This wealth of authority confirms that the City is incorrect in urging that its Policy is permissible under *Florence*. To the contrary, the Policy differs materially from that upheld by the Supreme Court. *See Fonder v. Sheriff of Kankakee Cnty*. 823 F.3d 1144, 1149 (7th Cir. 2016); *Cantley v. W. Va. Regl Jail & Corr. Facility Auth*., 771 F.3d 201, 208 (4th Cir. 2014); *Sanchez,* 2016 WL 4577008, at *4–5; *Phillips v. Sheridan Cty. Sherriff's Office,* 2015 WL 13689047, at *11 (D. Wyo. May 4, 2015) ("[T]he appropriate consideration for purposes of *Florence* is whether the pretrial detainee is *actually admitted* to the general jail population.") (emphasis added); *Holland*, 2013 WL 968295, at * 8 (N.D. Cal. Mar. 12, 2013).

The City also apparently contends that its Policy otherwise complies with the Fourth Amendment. Again, I disagree.

(*See* Exhibit "B" at p. 13).

In discussing *Florence*, this Honorable Court noted Justice Alito's frequently-cited concurring opinion, which cautioned "that it might be impermissible to strip search an arrestee 'whose detention has not been reviewed by a judicial officer and who could be held in available facilities apart from the general population.'" *Id*. (quoting *Florence*, 566 U.S. at 341 (Alito, J., concurring)). This Court recognized that "courts applying *Florence* have consistently held that critical to its holding was the detainee's placement in the prison's general population, which triggered the security concerns that comprise the bulk of the Court's analysis." *Id*.

CPD Directive No. 35 is problematic because it mandates the strip search without regard for reasonable suspicion even when (1) summary offenders are not going to be transferred to a prison's general population; and (2) it is performed at a time when defendant has no way to know whether the misdemeanor offenders will be transferred to a prison's general population since the search was performed *before* the arrestee was brought before a judicial officer. Without the arrestee being committed to the general population of a prison, defendant must have a reason to suspect that the specific arrestee was hiding weapons or contraband before engaging in a strip search. *Fate*, 24 F. Supp. 3d at 346. As the overwhelming and irrefutable (and admitted) evidence reflects, whether reasonable suspicion existed to support an invasive strip search never factored

into defendant's decision to perform strip searches.  This Court recognized that Defendant "here seeks virtually unlimited authority to strip search all its arrestees.  As the innumerable law enforcement agencies have concluded, however, the need for safety can be met fully with less extreme methods."  *Id*.[8]

## B.    Legal Standards Governing Class Certification

The United States Supreme Court recognized that "[c]lass actions serve an important function in our system of civil justice."  *Gulf Oil Co. v. Barnard*, 452 U.S. 89, 100 (1981). "Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiff's and counsel's ability to fairly and adequately protect class interests." *In re Prudential Ins. Co. Am. Sales Prac. Litig.*, 148 F.3d 283, 308 (3d. Cir. 1998).

Plaintiff must establish each of the four threshold requirements of subsection (a) of

---

[8] Courts in other circuits have reached the same conclusion as Judge Diamond.  For example, in *Hinkle v. Beckham County Board of Commissioners*, 962 F.3d 1204 (10th Cir. 2020), the United States Court of Appeals for the Tenth Circuit recently reversed the lower court's grant of summary judgment in a § 1983 strip search case, finding a policy similar to the policy at issue in the instant matter unconstitutional.  As the Tenth Circuit explained, "*Florence* does not authorize the County's policy and the search was otherwise unsupported by probable cause. Moreover, we conclude that the County's strip-search policy is facially unconstitutional because it directs jail officials to strip search all detainees immediately upon arrival at the jail, before determining they "will be" housed in its jail, and in the absence of probable cause that the detainees are secreting evidence of a crime." *Id.* at 1242. The Second Circuit, when considering a strip search practically identical to the one Mr. Pitney was subjected to, found that visual body cavity searches even following a felony arrest involving drugs must be supported by "a specific, articulable factual basis supporting a reasonable suspicion to believe the arrestee secreted evidence inside a body cavity." *Sloley v. VanBramer*, 945 F.3d 30, 38 (2nd Cir. 2019), quoting *People v. Hall*, 10 N.Y.3d 303, 306-07, 856 N.Y.S.2d 540, 886 N.E.2d 162 (2008)..

[8] While it is anticipated that defendant may question whether certain arrestees charged with misdemeanors should be included in the class, this District Court, by the Honorable Barclay Surrick, has already found that strip searches of individuals charged with misdemeanors can be unconstitutional:

> The absence of cases specifically addressing a police officer's strip search and body cavity search of an individual arrested for a misdemeanor and not detained in a jail or prison setting does not mean that the right was not clearly established.  Any reasonable police officer would have known that a strip search and body cavity search of Plaintiff under the circumstances was unconstitutional.

*Gallagher v. Green*, 2016 WL 3213346, *5 (E.D. Pa. June 10, 2016) (Surrick, J.)(refusing to grant new trial).

Rule 23, namely: "numerosity," "commonality," "typicality," and "adequate representation." *Montgomery Cty., Pa. ex rel. Becker v. MERSCORP, Inc.*, 298 F.R.D. 202, 209 (E.D. Pa. 2014) (quoting F.R.C.P. 23(a)).  Plaintiff must also show that this action qualifies for class treatment under at least one of the subdivisions of Rule 23(b).  *See Johnston* v. *HBO Film Management, Inc.*, 265 F.3d 178, 183 (3d Cir. 2001).  Under Rule 23(b)(3), a class action is appropriate where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Plaintiff bears the burden of establishing each element of Rule 23 by a preponderance of the evidence.  *In re Hydrogen Peroxide Antitrust Litigation,* 552 F.3d 305, 320 (3d Cir. 2008). Once a plaintiff has demonstrated a preliminary legal showing that the requirements of Rule 23 have been satisfied, the burden of proof falls upon the defendant to demonstrate otherwise. 2 H. Newberg, NEWBERG ON CLASS ACTIONS (4th ed. 2002) ("NEWBERG") §7.22 at 70-71.

The district court must conduct a "rigorous analysis" of the evidence and arguments in making the class certification decision.  *In re Hydrogen Peroxide Lit.,* 552 F.3d at 318.  That said, a district court "may inquire into the merits of the claims presented in order to determine whether the requirements of Rule 23 are met, *but not* in order to determine whether the individual elements of each claim are satisfied." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 305 (3d. Cir. 2011) (emphasis added).

The determinations called for by Rule 23 are questions addressed to the sound discretion of the district court.  *Oil Co.*, 452 U.S. at 100.  A decision to grant class certification is not a final order; it may be altered or amended as the case progresses towards resolution on the merits. F.R.C.P. 23(c)(1)(C).

13

1.      **The Requirements of F.R.C.P. 23(a)**

Rule 23(a) establishes four prerequisites for the maintenance of a class action:

(a)      The class is so numerous that joinder of all members is impracticable;

(b)      There are questions of law or fact common to the class;

(c)      The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(d)      The representative parties will fairly and adequately protect the interests of the class.

F.R.C.P. 23(a).  Each of these requirements is met here.

a.  *Numerosity*

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires that the class be "so numerous that joinder of all members is impracticable."  *Weiss v. York Hosp.*, 745 F.2d 786, 808 (3d Cir. 1984).  The Third Circuit has held that generally a class with more than 40 will satisfy the numerosity requirement.  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).

Here, discovery has identified at least 1,789 other individuals who were (1) arrested for summary or misdemeanor offenses; (2) placed in an administrative holding cell at the Chester Police Department (not a general prison population); (3) strip searched before (or without ever) being brought before a judicial officer; and (4) strip searched without defendant considering whether reasonable suspicion existed.  Defendant continues to employ its unconstitutional strip search policy, thus causing the list of victims to increase on a daily basis.  The class is obviously numerous, and the requirement of Rule 23(a)(1) is plainly satisfied.

As an additional requirement, our Court of Appeals has held that membership in the class, *vel non,* must be "currently and readily ascertainable based on objective criteria."  *City Select Auto Sales Inc. v. BMW Bank of N. Am., Inc.*, 867 F.3d 434, 439 (3d Cir. 2017).  "[A]t the certification stage, the plaintiff need not identify the actual class members.  He need only show how class

members *can* be identified." *Boyle v. Progressive Specialty Ins. Co.*, 326 F.R.D. 69, 83 (E.D. Pa. 2018) (citing *City Select*).  As set forth herein, objective criteria derived from Defendant's own records can be used to ascertain class membership.  Additionally, Defendant's own arrest records can be used to compile the names and addresses of class members for the purposes of sending them notice. This plainly satisfies the "ascertainability" requirement applied by the courts.  *See Harlan v. Transworld Sys., Inc.*, 302 F.R.D. 319, 328, n. 14 (E.D. Pa. 2014); *see also Souter, supra.*

   b. *Commonality*

   To satisfy Rule 23(a)(2), there must be "questions of law or fact common to the class." Satisfaction of the commonality requirement requires that plaintiffs demonstrate that their claims "depend upon a common contention," the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551 (2011).  "Commonality does not require an identity of claims or facts among class members; instead, [t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Johnston,* 265 F.3d at 184 (internal quotation marks omitted); *see also Marcus v. BMW of N. Am., LLC,* 687 F.3d 583, 597–98 (3d Cir. 2012).

   Rule 23 only requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only an individual member." A plaintiff need not show that all class members' claims are identical to each other, as long as there are common questions at the heart of the case; "factual differences among the claims of the putative class members do not defeat certification." Fed. R. Civ. P. 23(b)(3); *Baby Neal*, 43 F.3d 48, 56 (3d Cir. 1994); *Bizzarro*, 2009 WL 1617887 at *12 ("Commonality does not require that members of the

class share identical claims, rather the named plaintiffs' interests need only be representative of the absent class members"). A single common question is sufficient to satisfy the requirements of Rule 23(a)(2). *Baby Neal*, 43 F.3d at 56; *Florence*, 2008 WL 800970 at *7 (finding commonality in strip search class action and noting that "commonality does not require that members of the class share identical claims, but that the plaintiff's interests are representative of the absent class members."). In summary, "[c]ourts have consistently held that class actions challenging blanket strip search policies satisfy Rule 23(a)(2)'s commonality requirement." *Young v. County of Cook*, 2007 U.S. Dist. LEXIS 31086 at *15 (N.D. Ill. Apr. 25, 2007).[9]

In the instant case, plaintiff satisfies the commonality requirement. The crux of this case is that all members of the proposed class were illegally and unconstitutionally strip searched, in violation of the Fourth Amendment.  A common question of law exists as to the validity of defendant's strip search policy as prescribed by CPD Directive No. 35. To the extent that some individual issues may enter the analysis, those issues do not predominate over the common class-wide questions including, but not limited to, the constitutionality and legality of the City of Chester's strip search policy which does not consider whether reasonable suspicion exists for the search. The Court can and should decide these common issues for purposes of protecting class members and defendant from the risk of inconsistent results.

---

[9] *See also*, *e.g.*, *Dodge*, 226 F.R.D. at 180-181 (commonality exists where all members of the class assert that a blanket strip search policy exists, where all members contend that the policy is illegal, and where all members of the class claim they were searched pursuant to the policy which was uniformly applied to all detainees); *Marriott*, 227 F.R.D. at 172 (finding commonality where the representative parties and the members of the proposed class had the same legal claims based upon the same official procedure); *see also Sutton v. Hopkins County*, 2007 WL 119892, *4 (W.D. Ky. Jan. 11, 2007) ("Plaintiffs have alleged that the Defendants had a policy, custom, or practice of strip-searching persons on admission to and/or just prior to release from the Hopkins County Jail without regard to whether there existed the requisite individual, reasonable suspicion required by law. Given this allegation, the existence and constitutionality of the county's policy, custom or practice are common questions.").

### c.   *Typicality*

Rule 23(a)(3) requires that the claims of the named plaintiff be typical of the claims of the class. *MERSCORP,* 298 F.R.D. at 211; *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 250 (E.D. Pa. 2006). A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. *In re Nat'l League Players Concussion Injury Litig.,* 821 F.3d 410, 428 (3d Cir. 2016). Typicality is a "low threshold." *Id.* The typicality requirement may be satisfied even if there are some factual distinctions between the claims of the named plaintiff and those of other class members. *Id.*

The measure of whether a plaintiff's claims are typical is whether the nature of plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his personal claims he can reasonably be expected to advance the interest of absent class members. *Scott v. University of Delaware*, 601 F.2d 76, 84 (3d Cir. 1979). *See also In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 139 (D.N.J. 1984) (citing NEWBERG) (the majority of class action decisions have held that typicality is satisfied when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented). Plaintiff Kenard Pitney's claims are clearly typical of those of the class members, each of whom was subjected to the same unlawful search.[10]

---

[10] While defendant may contend that there are individual variations between the experiences of plaintiff and other class members, the Third Circuit has held that "[f]actual differences will not render a claim atypical if the claim arises from the same event or practice of course of conduct that gives rise to the claims of the class members, and it is based on the same legal theory." *Haxworth v. Blinder, Robinson & Co. Inc.*, 980 F.2d 912, 923 (3d Cir. 1992). Under this standard, plaintiff's claims are plainly typical. A related anticipated argument that may be raised by defendant in challenging certification – that each class members' individual damages must be determined – has likewise been rejected where common questions of liability predominate. *Wolgin v. Magic Marker Corp.*, 82 F.R.D. 168, 176 (E.D. Pa. 1979)("the 'overwhelming weight of authority' holds that the need for individual damages calculations does not diminish the appropriateness of class action certification where common questions as to liability predominate").

### d. Adequate Representation

Rule 23(a)(4) requires plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class."  "Whether adequacy has been satisfied 'depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.'"  *McDonough v. Toys R Us, Inc*., 638 F. Supp. 2d 461, 477 (E.D. Pa. 2009) (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)).  "The second factor 'seeks to uncover conflicts of interest between named parties and the class they seek to represent.'"  *Id.* (quoting *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 532 (3d Cir. 2004)).

Both prongs of the "adequacy" test are met here.  First, Plaintiff has retained experienced trial counsel to prosecute his claims and those of the class.  The firm of Feldman Shepherd Wohlgelernter Tanner Weinstock & Dodig LLP has been certified to represent plaintiff classes in class action litigation, and has tried class actions to verdict. To date, counsel has invested considerable resources in prosecuting this case, and has the ability and incentive to continue to represent the class vigorously.

Furthermore, adequacy is presumed and any challenge to adequacy is for Defendant to prove.  *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982).  Mr. Pitney asserts there is no conflict or antagonism of interests and has amply fulfilled his role as the class representative. Accordingly, Mr. Pitney adequately represents the interests of the class.

### 2.     The Requirements of FED. R. CIV. P. 23(b)

In addition to meeting the prerequisites of Rule 23(a), an action must satisfy at least one of

the three conditions of subdivision (b) of Rule 23.   Plaintiff proceeds here under Rule 23(b)(2)

and 23(b)(3)

#### i.   Plaintiff Satisfies the Requirements of Rule 23(b)(2)

Rule 23(b)(2) permits certification when "the party opposing the class has acted or refused

to act on grounds generally applicable to the class, thereby making appropriate final injunctive

relief or corresponding declaratory relief with respect to the class as a whole."  F.R.C.P. 23(b)(2).

Here, plaintiff seeks injunctive relief on behalf of all class members in the form of eliminating

CPD Directive No. 35 and effectively ending defendant's longstanding practice of unconstitutional

strip searches and sparing future detainees from suffering the same injustices.

#### ii.   Plaintiff Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) requires that the party proposing a class action establish that issues common

to the class predominate over the individual issues of particular class members. *See Amchem*

*Prod.v. Windsor*, 521 U.S. 591, 623 (1997). "The predominance inquiry tests whether proposed

classes are sufficiently cohesive to warrant adjudication by representation." *Sullivan v. DB*

*Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (citations and internal quotation marks

omitted).

> To assess predominance, a court at the certification stage must examine each element of a
> legal claim "through the prism" of Rule 23(b)(3). *In re DVI, Inc. Sec. Litig.,* 639 F.3d 623,
> 630 (3d Cir.2011). A plaintiff must "demonstrate that the element of [the legal claim] is
> capable of proof at trial through evidence that is common to the class rather than individual
> to its members." *Hydrogen Peroxide,* 552 F.3d at 311-12.

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 600 (3d Cir. 2012); *see also Gwiazdowski v. County*

*of Chester*, 263 F.R.D. 178, 189 (E. D. Pa. 2009) ("At the class certification stage, a plaintiff must

demonstrate that the elements of its claim are 'capable of proof at trial through evidence that is common to the class rather than individual to its members.'"); *In re NASDAQ Mkt. Makers*, 169 F.R.D. 473, 517 (S.D.N.Y. 1996)(court must evaluate whether "common proof will predominate at trial"); *see also Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1986) (the "significant aspect" requirement is met if "jury findings on the class question ... will ... significantly advance the resolution of the underlying ... cases"); *Dietrich v. Bauer,* 192 F.R.D. 127 (S.D.N.Y. 2000)(in determining whether common issues of fact predominate, "a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class"). This is especially true "when the class is challenging a uniform policy," as "the validity of that policy predominates over individual issues." *Blihovde*, 219 F.R.D. at 620.

The Third Circuit has reiterated the predominance requirement as follows:

> Predominance tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, a standard far more demanding than the commonality requirement of Rule 23(a), requiring more than a common claim. Issues common to the class must predominate over individual issues. Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case. If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable.

*Hydrogen Peroxide*, 552 F.3d at 310-11; *Bizzarro*, 2009 WL 1617887 at *15 (citing *id.* and concluding that predominance was met in New Jersey strip search case); *Wilson*, 256 F.R.D. at 488 (same); *Florence*, 2008 WL 800970 at *12-13 (same).

Here, the proposed class members' claims all involve a central legal issue: Does CPD's admitted and undisputed policy and practice of strip searching all summary and misdemeanor offense arrestees, who are to be placed in a CPD administrative holding cell before

their detention is reviewed by a judicial officer, without a determination of reasonable suspicion, violate the Fourth Amendment's prohibition against unreasonable searches?

Plaintiff's claims also share common factual issues – including the key undisputed factual issue, i.e. that all arrestees in the proposed class were subjected to the strip search described by Commissioner Gretsky. Unquestionably, the legal and factual issues relating to the strip search policy in this litigation predominate over any of the Plaintiff's individual issues. *See e.g. Gwiazdowski*, 263 F.R.D. at 189 (predominance found where strip search and delousing procedure was "in accordance with a policy promulgated by Defendant" and where determining "whether the search was unreasonable" was susceptible to common proof "because the alleged intrusion of privacy and Defendant's interests in performing the delousing procedure are substantially the same for all class members"); *Marriott*, 227 F.R.D. at 173 (predominance found despite differing facts regarding personal involvement of some individual defendants and slight differences between class members).

In order to defeat Rule 23(b)(3) certification, Defendant may argue that this case necessitates an individual determination of damages for each class member and, as such, these damage calculations will predominate over other common issues. It is, however, well-settled law that distinctions in damages will not defeat class certification when there are core common liability issues to be determined. Indeed, it was noted nearly twenty years ago that  the "'overwhelming weight of authority holds that the need for individual damages calculations does not diminish the appropriateness of class action certification where common questions as to liability predominate.'" *In re Asbestos School Litig.*, 104 F.R.D. 432 (E.D.PA. 1984) (*quoting Wolgin v. Magic Marker Corp.*, 82 F.R.D. 168, 176 (E.D. Pa. 1979)); *accord Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 399 (D.N.J. 1998); *Seawell v. Universal Fidelity Corp.*, 235 F.R.D. 64 (E.D. Pa. 2006).

Courts in the Third Circuit have so recognized in the class certifications of strip search cases.

*Bizzarro*, 2009 WL 1617887 at *17; *Wilson*, 256 F.R.D. at 489; *Florence*, 2008 WL 800970 at*13.

The Court can also, if necessary, utilize various management tools to address individualized issues

such as:

> (1) bifurcating liability and damage trials with the same or different juries;
>
> (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.

*Florence*, 2008 WL 800970 at *13 (citing authorities); *see also In re Visa Check/Master Money*

*Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001) (recognizing these procedures as "management

tools").

Courts have consistently granted class certification in illegal strip search cases. *See, e.g.,*

*Tardiff v. Knox County*, 365 F.3d 1 (1st Cir. 2004) (certifying class notwithstanding individual

individualized issues); *Marriott*, 227 F.R.D. at 173 (notwithstanding uncertainties regarding the

extent of the searches and the corresponding amount of compensatory damages, certification under

Rule 23(b)(3) was proper because "[w]hile there are as many as 2,000 class members, there is one

central issue of law – whether the change out strip search violates the Fourth Amendment.

Piecemeal litigation by multiple plaintiffs in multiple lawsuits would not promote efficiency and

would be inferior to litigation of the issue in one suit.").[11]   Defendant has violated the rights of a

---

[11] Other examples of certified class actions in strip search cases include, e.g., *In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006); *Tardiff v. Knox County*, 365 F.3d 1 (1st Cir. 2004); *Eddleman v. Jefferson Cty.*, 96 F.3d 1448 (6th Cir. 1996); *Streeter v. Sheriff of Cook County*, 256 F.R.D. 609 (N.D. Ill. 2009); *Jones v. Murphy*, 256 F.R.D. 519 (D. Md. 2009); *Johnson v. District of Columbia*, 248 F.R.D. 46 (D.D.C. 2008); *Mitchell v. County of Clinton*, 2007 WL 1988716 (N.D.N.Y. July 5, 2007); *Moyle v. County of Contra Costa*, 2007 WL 4287315 (N.D. Cal. Dec. 5, 2007); *Marriott v. County of Montgomery*, 227 F.R.D. 159 (N.D.N.Y. 2005), aff'd, 2005 WL 3117194 (2d Cir. 2005); *Dodge v. County of Orange*, 226 F.R.D.177, (S.D.N.Y. 2005); *Calvin v. Sheriff of Will County*, 2004 WL 1125922 (N.D. Ill. May 17, 2004); *Maneely v. City of Newburgh*, 256 F. Supp. 2d 204 (S.D.N.Y. 2003); *Blihovde v. St. Croix*

large number of economically-challenged individuals such that the cost of pursuing individual litigation to seek recovery against a well-financed adversary is not feasible. Thus, the alternatives to a class action are either no recourse for thousands of victims, or even in the unlikely event that they all become aware of their rights and could retain counsel, a multiplicity of scattered suits resulting in the inefficient administration of litigation. The common and predominating factual and legal issues noted above establish this matter as being capable of efficient, class-wide adjudication on the merits. Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of this matter.

Proceeding as a class action is indisputably the superior method of prosecuting this case. In fact, the class action mechanism is designed for this very situation, where an individual seeks to vindicate "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Id*. To require thousands of identical cases to be filed to address the claims in this case – all with the attendant possibility of inconsistent adjudications – would be illogical at best.

Here, there is a common course of conduct by Defendant in adopting and applying a policy of strip searching all detainees, without regard to the constitutional prerequisite of reasonable

---

*Cty.*, Wis., 219 F.R.D. 607 (W.D. Wis. 2003); *Nilsen v. York County*, 219 F.R.D. 19 (D. Me. 2003); *Bynum v. Dist. of Columbia*, 217 F.R.D. 43 (D.D.C. 2003); *Spinner v. City of New York*, 2003 WL 23648356 (E.D.N.Y. Oct. 10, 2003); *Mack v. Suffolk County*, 191 F.R.D. 16 (D. Mass. 2000); *Smith v. Montgomery County*, 573 F. Supp. 604 (D. Md. 1983); *Doan v. Watson*, 2002 WL 31730917 (S.D. Ind. December 4, 2002); *Sanchez v. County of Essex*, No 2:15-CV-3391 (D.N.J. 2015).

suspicion before undertaking a strip search. The same core evidence will be introduced to prove Defendant's unconstitutional conduct for every class member. The legal issues, i.e., whether Defendant's strip search policy violates the 4th Amendment rights of class members, are indistinguishable. Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of this matter.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, plaintiff respectfully requests that this Honorable Court grant this motion and enter the proposed order submitted herewith.

Dated: September 16, 2020

Respectfully submitted,

Kenard Pitney, *by his attorneys*,

LAW OFFICES OF PATRICK G. GECKLE, LLC

<u>/s/ Patrick Geckle</u>
PATRICK GECKLE
1515 Market Street, Suite 1200
Philadelphia, PA  19102
215-735-3326

FELDMAN SHEPHERD WOHLGELERNTER
TANNER WEINSTOCK & DODIG, LLP

_____

ALAN M. FELDMAN
EDWARD S. GOLDIS
ANDREW K. MITNICK
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
215-567-8300

Attorneys for Plaintiff and the Class

24