**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KENARD PITNEY, on behalf of himself and all others similarly situated, | |
| *Plaintiff*, | |
| v. | Case No. 2:19-cv-00799 |
| CITY OF CHESTER, ET AL., | |
| *Defendant*. | |

**PLAINTIFF'S MOTION FOR FINAL APPROVAL**
**OF CLASS ACTION SETTLEMENT, FOR AN AWARD OF ATTORNEYS' FEES**
**AND FOR APPROVAL OF INCENTIVE AWARD TO THE CLASS REPRESENTATIVE**

Plaintiff Kenard Pitney hereby moves for Final Approval of Class Action Settlement, for

an Award of Attorneys' Fees and for Approval of an Incentive Award to the Class

Representative.  Plaintiff relies upon and incorporates herein the attached Memorandum of Law.

Respectfully submitted:

LAW OFFICES OF PATRICK G. GECKLE, LLC

/s/ Patrick Geckle
PATRICK GECKLE
1515 Market Street, Suite 1200
Philadelphia, PA  19102
215-735-3326


FELDMAN SHEPHERD WOHLGELERNTER
TANNER WEINSTOCK & DODIG, LLP

/s/ Alan M. Feldman
ALAN M. FELDMAN
EDWARD S. GOLDIS
ANDREW K. MITNICK
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
215-567-8300
Attorneys for Plaintiff and the Class

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KENARD PITNEY, on behalf of himself and all others similarly situated, | |
| *Plaintiff*, | |
| v. | Case No. 2:19-cv-00799 |
| CITY OF CHESTER, ET AL., | |
| *Defendant*. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT, FOR AN AWARD OF ATTORNEYS' FEES
AND FOR APPROVAL OF INCENTIVE AWARD TO THE CLASS REPRESENTATIVE**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION………………………………………………………..……1

II.     NATURE AND HISTORY OF THE LITIGATION…………………………….3

        A.     Procedural History……………………………………… …………3

III.    SUMMARY OF SETTLEMENT TERMS………………………….…………..4

IV.     LEGAL ARGUMENT……………………………………………………….6

        A.     Criteria for Certification of a Settlement Class………………….…………6

               1.      Numerosity…………………………………………………7

               2.      Commonality………………………………………………7

               3.      Typicality………………………………………………..7

               4.      Adequacy of Representation……………………………...…………..8

               5.      Rule 23(b)(3) Considerations………………………………………9

V.      THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
        ADEQUATE AND SHOULD BE APPROVED BY THE COURT…………………10

        A.     The Complexity, Expense and Likely Duration of the Litigation……………12

        B.     The Reaction of the Class to the Settlement………………………….……12

        C.     The Stage of the proceedings and the Amount of Discovery Completed…….13

        D.     The Risks of Establishing Liability and Damages……………………………14

        E.     The Risks of Maintaining the Class Action Through Trial……………..……15

        F.     Ability of the Defendants to Withstand a Greater Judgment………………  16

        G.     Reasonableness of the Settlement in Light of the Best Possible
               Recovery and the Attendant Risks of Litigation……………………………...16

        H.     Range of Reasonableness of the Settlement Fund in Light of the
               Best Possible Recovery and the Attendant Risk of Litigation………………16

VI.     THE PLAN OF DISTRIBUTION OF SETTLEMENT FUNDS IS FAIR………..…18

    A.     The Incentive Award to Plaintiff Kenard Pitney Should be Approved………18

    B.     Class Counsel's Request for Attorneys' Fees is Fair and Reasonable and Should be Approved by the Court………………………………………..19

VII.    CONCLUSION…………………………………………………………………….23

ii.

## TABLE OF AUTHORITIES

**CASE**                                                                                    **PAGE**

Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997)…………………… 6, 9, 15, 17

Bell Atlantic Corp. v. Bolger, 2 F.3d 1304, 1313 n. 15 (3d Cir. 1993)……………. 13

Bogosian v. Gulf Oil Corp., 621 F. Supp. 27 (E.D. Pa. 1985)…………………….. 19

Bonett v. Education Debt Services, Inc., 2003 WL 21658267
(E.D. Pa. 2003)……………………………………………………………………14

Bredbenner v. Liberty Travel, Inc. No. Civ. A. 09-1248MF, 2011
WL 1344745, at *20 (D.N.J. Apr. 8, 2011)…………………………………..…. 21

Brotherton v. Cleveland, 141 F. Supp. 2d (S.D. Ohio 2001)……………………… 19

Bryan v. Pittsburgh Plate Glass Co., 494 F.2d 799, 804 (3d Cir. 1974)……………11

Cotton v. Hinton, 559 F.2d 1326 (5th Cir. 1977)…………………………………   16

Eichenholtz v. Brennan, 52 F.3d 478, 482 (3d Cir. 1995)…………………………11

Eisenberg v. Gagnon, 766 F.2d 770, 786 (3rd Cir. 1985)…………………….…. 7

Erie County Retirees' Ass'n v. County of Erie, 192 F. Supp. 2d 369,
377-78 (W.D. Pa. 2002)……………………………………………………………. 19, 20

Erie Forge and Steel, Inc. v. Cyprus Minerals Co., Civ. Action No. 94-404
(W.D. Pa. 1996)……………………………………………………………………22

Fisher Brothers v. Phelps Dodge Industries, Inc., 604 F. Supp. 446
(E.D. Pa. 1985)…………………………………………………………….…. 17

Fox v. Integra Financial Corp., Civ. Action No. 90-1504 (W.D. Pa. 1996)………..22

General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147,
156-157 (1982)…………………………………………………………………….. 8

Girsh v. Jepson, 521 F.2d 153 (3rd Cir. 1975)………………………………….  3, 10, 11

Haas v. Burlington County,  2019 WL 413530 (D.N.J. 2019)……………………  14

In re AT&T Corp., 455 F.3d 160, 170 (3d Cir. 2006)……………………………  20

**CASE**                                                                        **PAGE**

In Re Cendant Corp. Litigation, 264 F.3d 201, 240 (3d Cir. 2001)……………….. 16, 19

In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,
410 F. Supp. 659 (D. Minn. 1974)………………………………………………… 16

In re Corel Corp. Inc. Securities Litig., 293 F. Supp. 2d 484 (E.D. Pa. 2003)…... 22

In re Datatec Systems, 2007 WL 4225828, *3……………………………….. 13, 21

In Re General Motors Pick-Up Truck Fuel Tank Products Liab. Litig.,
55 F.3d 768, 812 (3d Cir. 1995)…………………………………………………12, 13, 14, 16, 19

In re Ikon Office Solutions, Inc. Sec. Litig., 194 F.R.D. 166, 184 (E.D. Pa. 2000)..18

In re Linerboard Antitrust Litigation, 2004 WL 1221350 (June 2, 2004 E.D. Pa.)…19

In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions,
148 F.3d 283, 321 (3d Cir. 1998)…………………………………………………3, 7, 8, 9, 10, 15

In re Ravisent Tech., Inc. Securities Litig., 2005 WL 906361 at *10-12
(E.D. Pa. Apr. 18, 2005)…………………………………………….…………21

In re Rent-Way Securities Litigation, 305 F. Supp. 2d 491, 512-13, 516-17
(W.D.Pa. 2003)………………………………………………………….…..…19

In Re Rite Aid Corporation Securities Litig., 269 F.Supp.2d 603, 607
(E.D. Pa. 2003), 362 F.Supp.2d 587 (E.D. Pa. 2005) (on remand)………………….…10, 19, 20, 22

In re Smithkline Beckman Corp. Sec. Litig., 751 F. Supp. 525, 530 (E.D. Pa. 1990)...13

Kelly v. Bus. Info. Grp., Inc., No. CV 15-6668, 2019 WL 414915, at *11
(E.D. Pa. Feb. 1, 2019)………………………………………………………...…13, 17

Lake v. First Nationwide Bank, 900 F.Supp. 726, 732 (E.D. Pa. 1995)…………...…11, 17

Lan, 2008 WL 763763, *23………………………………………………...…21

Lazy Oil v. Wotco Corp., 95 F. Supp. 2d 290, 322-23 (W.D.Pa. 1997)……………..19

Lewis v. Curtis, 671 F.2d 779, 788 (3rd Cir. 1982)………………………….…8

Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)………………………………11

iv.

**CASE**                                                                 **PAGE**

Officers for Justice v. Civil Service Comm'n of San Francisco, 688 F.2d 615, 625 (9ᵗʰ Cir. 1982)……………………………………………..……………………11

Sanchez v. County of Essex, 2016 WL 4577008 (D.N.J. 2016)………………....14, 19

Saunders v. Berks Credit and Collections, 2002 WL 1497374 at *12 (E.D. Pa. July 11, 2002)……………………………………………………………15

Smith v. Dominion Bridge Corp., 2007 WL 1101272 (E.D. Pa. April 11, 2007)…..21

Walsh v. Great Atlantic and Pacific Tea Co., 96 F.R.D. 632, 642 (D.N.J.), aff'd., 726 F.2d 956 (3d Cir. 1983)………………………………………………11, 18

Weiss v. Mercedes-Benz of N. Am. Inc., 899 F. Supp. 1297 (D.N.J. 1995)……….17

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

KENARD PITNEY, on behalf of himself and
all others similarly situated,

      *Plaintiff*,

    v.

CITY OF CHESTER, ET AL.,

      *Defendant*.

Case No. 2:19-cv-00799

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL**
**OF CLASS ACTION SETTLEMENT, FOR AN AWARD OF ATTORNEYS' FEES**
**AND FOR APPROVAL OF INCENTIVE AWARD TO THE CLASS REPRESENTATIVE**

**I.**     **INTRODUCTION**

      Plaintiff Kenard Pitney and Class Counsel respectfully submit this Memorandum of Law

in Support of the Motion for Final Approval of the proposed settlement of this class action, an

award of counsel fees and an incentive payment to the plaintiff/class representative.  The terms

of the settlement are set forth in the Settlement Agreement filed on January 27, 2021 (ECF 74).

As discussed herein, the proposed settlement provides comprehensive equitable and

compensatory relief for the Class and for all persons detained by the police department of

defendant City of Chester, and meets all the standards for settlement approval under Rule 23(e).

Accordingly, it should be granted final approval as a fair, reasonable and adequate resolution of

the claims of all Class Members. A proposed Order of Final Approval is attached hereto as

Exhibit "A".

      Plaintiff and class counsel submit that the Settlement represents an excellent resolution of

this Class Action for several reasons.  First, as a result of this litigation, the City of Chester has

1

revised its strip search policies to eliminate the strip searching of all detainees regardless of whether reasonable suspicion existed that the detainee was concealing weapons or contraband. (ECF 74 at 9-10).  Defendant City of Chester has expressly acknowledged that this litigation contributed to the revision of its strip search policies.  Id.  The City of Chester will now utilize a checklist, approved by this Court, which recognizes the necessity of showing that reasonable suspicion exists before a strip search may be conducted.  Id.

Second, the Settlement provides that the defendant City of Chester will establish a Settlement Fund which will provide payments to Class Members as follows:

1.  Each Class Member whose highest graded charge constituted a summary offense will receive a payment of $1,000 upon submission of a timely claim form;

2.  Each Class Member charged with a misdemeanor offense will receive a payment of $400 upon submission of a timely claim form; and

3.  Each Class Member charged with possession of a small amount of marijuana for personal use will receive a payment of $100 upon submission of a timely claim form.

Third, the City of Chester has agreed not to object to an award of attorneys' fees to Class Counsel up to $275,000, and to make an incentive payment to plaintiff and Class Representative Kenard Pitney of $25,000.  These payments will not dilute or lessen the payments to Class Members.  Similarly, defendant City of Chester has agreed to pay all expenses of administration of the settlement to the Settlement Administrator, Rust Consulting.  Class Counsel has agreed to absorb all expenses of litigation and will not seek compensation for those expenses.

Fourth, the stage of the proceedings demonstrates the fairness and non-collusive nature of the settlement, which was reached only after extensive litigation including motion practice, depositions, review of thousands of documents, a private mediation and a settlement conference. All negotiations were conducted in an arms-length manner.

For all these reasons, and those set forth in greater detail below, plaintiff and Class Counsel respectfully suggest that the settlement is fair, reasonable and adequate and satisfies all of the criteria routinely applied for the approval of class action settlements. See, e.g., In Re Prudential Ins. Co. of Am. Sales Litig., 148 F.3d 283 (3rd Cir. 1998); Girsh v. Jepson, 521 F.2d 153 (3rd Cir. 1975).

## II.   NATURE AND HISTORY OF THE LITIGATION

### A.   Procedural History.

On February 25, 2019, plaintiff Kenard Pitney, in his individual capacity, filed a Complaint against defendant City of Chester and others, alleging that he was unlawfully strip searched following an arrest for public drunkenness, despite the absence of reasonable suspicion that he was in possession of contraband or a weapon. All of the other named defendants were dismissed by Stipulation, and plaintiff further stipulated to proceed with a Monell claim against the City of Chester only, limited to its strip search policies. (ECF 6, 9). On October 3, 2019, plaintiff filed a motion seeking leave to amend the Complaint to assert a Class Action (ECF 14). On October 30, 2019, defendant City of Chester filed a Motion for Summary Judgment (ECF 19). By agreement of the parties, and with the consent of the Court, a decision on the Motion to Amend was deferred pending a decision on defendant's summary judgment motion.

On May 20, 2020, the Court issued an Order and Opinion denying defendant's Motion for Summary Judgment (ECF 34). On May 27, 2020, plaintiff's Motion for Leave to File an Amended Complaint setting forth a Class Action against defendant was granted (ECF 36). Defendant's Motion to Amend the Order denying Summary Judgment to permit the Order to be certified for appeal was denied on June 9, 2020 (ECF 45).

While discovery proceeded, the parties attended a voluntary private mediation conducted by Stephen M. Orlofsky, a retired Federal Judge, on September 1, 2020.  The mediation was not successful in resolving the parties' differences.  Thereafter, the parties were referred by the Court to a settlement conference with Magistrate Judge Timothy R. Rice, which was held on September 30, 2020.  The conference with Judge Rice was pivotal in bringing the parties closer on major issues.

On September 16, 2020, plaintiff filed a Motion for Class Certification (ECF 61), followed by a response from the defendant City of Chester and a Reply by plaintiff.  Intensive discussions between counsel for the parties continued over the succeeding months, and on January 27, 2021, the parties filed a Joint Motion for Preliminary Approval of Settlement, which included as an exhibit the Settlement Agreement entered into by the parties (ECF 74).  By Order of February 3, 2021, the Settlement Agreement was preliminary approved by the Court (ECF 75).

## III.    <u>SUMMARY OF SETTLEMENT TERMS</u>

The parties have agreed, subject to this Court's approval, to a settlement of this litigation on a Class-wide basis.  The terms of the settlement are set out in the Settlement Agreement filed on January 27, 2021 (ECF 74).  The Settlement Class is defined as follows:

> All persons who have been (1) detained in a holding cell at the City of Chester Police Department (2) as a result of being arrested and/or charged with summary offenses, civil enforcement offenses, child support enforcement arrears, traffic offenses, disorderly conduct offenses, contempt proceedings, non-violent misdemeanor offenses in which a weapon was not utilized nor brandished and/or no injury was caused to an individual, misdemeanors not involving drugs or controlled substances (exclusive of possession of a small amount of marijuana for personal use), failure to pay financial fines, penalties and/or costs in like matters as set forth above; and/or failure to appear at any court proceedings on like matters as set forth above; and (3) who were strip searched upon their entry into detainment and/or custody and/or were strip-searched prior to an appearance before a judge or judicial officer who had the

authority to release the person as referred to above from detainment and/or custody; and (4) the strip search was conducted and/or performed pursuant to the City of Chester's strip search policy regardless of circumstances indicative of reasonable suspicion.  The Class Period commences on February 25, 2017 and ends on December 9, 2020.

According to information and data supplied by defendant City of Chester, the Class consists of 1,010 persons, who may be characterized as follows:

(a)     205 Class Members arrested for summary offenses, who are entitled to a payment of $1,000 upon submission of a timely claim form;

(b)     793 Class Members arrested for misdemeanor offenses, who are entitled to a payment of $400 upon submission of a timely claim form; and

(c)     12 Class Members arrested for possession of a small amount of marijuana for personal use, who will receive a payment of $100 upon submission of a timely claim form.

Defendant City of Chester has agreed to pay all claims for which a timely claim form is submitted, for a total potential payout to the Class of $523,400.  If a Class Member owes child support, or costs or fines owed as a result of an adjudication by any of the courts of the Commonwealth of Pennsylvania, that Member's payment under the settlement will be credited towards their child support debt or costs or fines owed.

Defendant has further committed to pay all costs of administration of the settlement without any ceiling, and has further agreed not to oppose Class Counsel's application for an award of counsel fees not to exceed $275,000.  Defendant also consents to a payment of $25,000 to plaintiff and Class Representative Kenard Pitney.  For its part, Class Counsel has agreed to absorb all costs and expenses associated with this litigation and to not seek reimbursement of such expenses.

Pursuant to the Settlement Agreement and this Court's Order of Preliminary Approval, a Settlement Administrator, Rust Consulting, was selected to effectuate Notice of the Settlement

and to compile claim forms submitted by Class Members.  The Declaration of Jason M.

Stinehart, Program Manager at Rust Consulting, is attached hereto as Exhibit "B" and describes

the manner of notice to the Class, which includes Notice of Settlement and Claim Forms sent to

Class Members via first-class mail, placement of Summary Notices of the Settlement in the

Delaware County Daily Times on three different occasions, an automated toll-free number with

pre-recorded information about the settlement in both English and Spanish, and a website at

www.cityofchesterstripsearch.com where settlement Class Members can download a Claim

Form in either English or Spanish or file their claims on line.  The deadline for the submission of

Claim Forms is July 3, 2021.  As of May 5, 2021, Rust has received 43 Claim Forms.  No Class

Members have opted out of the settlement or objected to the terms of the settlement.

## IV.  LEGAL ARGUMENT

### A.  Criteria for Certification of a Settlement Class.

When the Court preliminarily approved this settlement, it considered whether the

Settlement Class could be conditionally certified for settlement purposes.  See Amchem

Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997) (while trial court may disregard

management issues in certifying a settlement class, the proposed class must still satisfy the other

requirements of Rule 23).  As final approval of the settlement also involves a determination that

certification of the Settlement Class is appropriate, the analysis applies again at this juncture.

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions.

One or more members of a class may sue as representative parties on behalf of a class if: (1) the

class is so numerous that joinder of all members is impracticable; (2) there are questions of law

or fact common to the class; (3) the claims or defenses of the representative parties are typical of

the claims or defenses of the class; and (4) the representative parties will fairly and adequately

protect the interests of the class.  In support of their contention that proper and sufficient grounds for class certification exist under Rule 23, both parties submit the following:

        1.      **Numerosity.**

Plaintiff and defendant City of Chester assert that the Members of the Settlement Class are so numerous that joinder of all members is impracticable  According to records maintained by the City of Chester, there are 1,010 members of the Settlement Class.  In light of the number of Class Members, the joinder of all such individuals is not practicable. Therefore, numerosity is established.

        2.      **Commonality.**

The parties contend that there are questions of law or fact common to the Class.  As recited in the Joint Motion for Preliminary Approval of the Settlement, it is undisputed that defendant City of Chester had, for many years, a uniform policy of strip searching all detainees admitted to the cell block of the Chester Police Department, without regard to whether reasonable suspicion existed that the individual was concealing a weapon or contraband.  Where, as here, a defendant has engaged in uniform and standardized conduct toward putative Class Members, commonality is satisfied.  See In Re Prudential, 148 F.3d 283 (3rd Cir. 1998).

        3.      **Typicality.**

This requirement is "designed to align the interests of the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals."  In Re Prudential, 148 F.3d at 311.  The threshold for establishing typicality is low.  Thus, typicality does not require that the claims of the class members be identical.  Eisenberg v. Gagnon, 766 F.2d 770, 786 (3rd Cir. 1985).  Rather, a plaintiff's claims are typical when the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating

his personal claims, he can reasonably be expected to advance the interests of absent class

members.  See, e.g., General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 156-157

(1982); see also H. Newberg & A. Conte, Newberg on Class Actions (4th Ed. 2002) at §3.13.

In this case, each Class Member was subjected to a degrading strip search even in the

absence of reasonable suspicion that the individual possessed contraband or a weapon.  The

claims of Mr. Pitney and the Members of the Class arise from the same course of conduct and

are based upon the same theory of liability. Typicality has accordingly been demonstrated.

### 4.      Adequacy of Representation.

A representative plaintiff must be able to provide fair and adequate protection for the

interests of the class.  That protection involves two factors: (a) the representative plaintiff's

attorney must be qualified, experienced, and generally able to conduct the proposed litigation;

and (b) the representative plaintiff must not have interests antagonistic to t hose of the class.  See

e.g., In Re Prudential, 148 F.3d at 312; Lewis v. Curtis, 671 F.2d 779, 788 (3rd Cir. 1982).

Class Counsel have substantial experience in class action litigation and are qualified to

represent the Class and conduct this litigation.  Class Counsel's experience includes not only the

settlement of other Class Actions, but the trial of Class Actions to verdict in the state courts of

Pennsylvania and New Jersey.

Mr. Pitney, the Representative Plaintiff, fairly and adequately represents the interests of

the Settlement Class.  He has no interests antagonistic to the Class and is a suitable and adequate

Class Representative. Thus, the adequacy of representation of the class is not an issue.

### 5.      Rule 23(b)(3) Considerations.

The proposed settlement contemplates a class certification permitting opt-outs pursuant to

Rule 23(b)(3).  An action may be maintained as a class action if the four elements described

above are satisfied, and in addition, certain other conditions under Rule 23(b)(3) are met. The Court must find that

> the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a Class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

The requirement that the questions of law or fact common to all members of the Class predominate over questions pertaining to individual members is normally satisfied where plaintiffs have alleged a common course of conduct on the part of the defendant. In Re Prudential, 148 F.3d at 314-315. Plaintiff has alleged such a common course of conduct by defendant. Class Members were all subjected to strip searches without regard to whether reasonable suspicion existed to conduct such an invasive search. The predominating issue is whether such a policy violated the constitutional rights of members of the class.

A Class Action is also superior to other available methods for the fair and efficient adjudication of the claims asserted in this litigation. A class resolution of the issues avoids the difficulties which would be encountered in the management of separate and individual claims, and allows access to the courts for those who might not otherwise be able to seek redress in what would likely be complex constitutional claims involving relatively modest damages. See Amchem Products, Inc. v. Windsor, 521 U.S. 591, 617, quoting Mace v. Van Rue Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").

For the reasons set forth herein, both the predominance and superiority criteria are satisfied in this case.  Defendant City of Chester joins with plaintiff in seeking certification pursuant to Rule 23(b)(3) for purposes of settlement.

## V.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

When a proposed class-wide settlement is reached, it must be submitted to the court for approval.  NEWBERG at §11.24.  Preliminary approval is the first of three steps that comprise the approval procedure for settlement of a class action.  The second step is the dissemination of notice of the settlement to all class members.  The third step is a settlement approval hearing. See MANUAL FOR COMPLEX LITIGATION (FOURTH) §21.63 (2004), available at http://www.fjc.gov/public/pdf.nsf/lookup/mc14.pdf/$file/mc14.pdf.  The first two steps have been completed.

The question presented on a motion for final approval of a proposed class action settlement is whether the proposed settlement is fair in light of the following facts, often referred to as the Girsh factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action throughout trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation …

Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975); In Re Prudential, 148 F.3d at 317; In Re Rite Aid Corporation Securities Litig., 269 F.Supp.2d 603, 607 (E.D. Pa. 2003), 362 F.Supp.2d 587 (E.D. Pa. 2005) (on remand).

Trial courts generally are afforded broad discretion in determining whether to approve a proposed class action settlement.  See, Eichenholtz v. Brennan, 52 F.3d 478, 482 (3d Cir. 1995); Girsh v. Jepson, supra. Thus, this Court must now ascertain whether the proposed settlement is within a "range of reasonableness" which experienced attorneys could accept in light of the relevant risks of the litigation.  See Walsh v. Great Atlantic and Pacific Tea Co., 96 F.R.D. 632, 642 (D.N.J.), aff'd., 726 F.2d 956 (3d Cir. 1983).  In determining whether this settlement falls within this range, the Court should bear in mind "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion …."  Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972).

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, courts have consistently held that the function of a judge reviewing a settlement is neither to rewrite the settlement agreement reached by the parties nor to try the case by resolving the issues intentionally left unresolved.  Bryan v. Pittsburgh Plate Glass Co., 494 F.2d 799, 804 (3d Cir. 1974); see also Officers for Justice v. Civil Service Comm'n of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982).  A settlement represents the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither side chooses to risk taking to final resolution.  Courts, therefore, have given considerable weight to the views of experienced counsel as to the merits of a settlement.  See Lake v. First Nationwide Bank, 900 F.Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class").

Here, experienced counsel firmly believe that the settlement, as structured and contemplated by the parties, represents an eminently reasonable resolution of the dispute  An

evaluation of the relevant factors demonstrates that the Settlement fits well within the range of reasonableness and should be approved.

### A.        The Complexity, Expense and Likely Duration of the Litigation.

If this litigation were to proceed, the Court would be required to rule on the many issues likely to be raised in the parties' briefing on class certification.  While the Representative Plaintiff believes that he would prevail on all issues, there is at least some risk he would not.

Even if plaintiff were able to prevail on class certification, a fairly lengthy and expensive trial would most likely ensue.  In addition to requiring testimony from multiple police officers, it would be necessary to retain and present testimony from expert witnesses on liability and damages issues.  Testimony from other class members would also likely be necessary. Moreover, it would be unrealistic not to expect appeals from any result reached.  Avoidance of this unnecessary expenditure of time and resources clearly benefits all parties.  See In Re General Motors Pick-Up Truck Fuel Tank Products Liab. Litig., 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and ardent opposition from the defendant with a "plethora of pretrial motions" were facts favoring settlement, which offers immediate benefits and avoids delay and expense).

### B.        The Reaction of the Class to the Settlement.

As set forth herein, notice has been provided to the class by first class mail, publication in a local newspaper, a toll-free telephone number and the existence of a dedicated website, advising members of the terms of the settlement and their right to opt out or object to the settlement terms.  The deadline for class members to exclude themselves from the settlement or object to the settlement terms was April 19, 2021.  As of the date of the filing of this motion, no class member has elected to be excluded from the class and no objections have been received.

Here, the response of the class represents a reliable barometer of the overall fairness of the settlement itself. See Bell Atlantic Corp. v. Bolger, 2 F.3d 1304, 1313 n. 15 (3d Cir. 1993); Kelly v. Bus. Info. Grp., Inc., No. CV 15-6668, 2019 WL 414915, at *11 (E.D. Pa. Feb. 1, 2019) ("The very minimal number of exclusion requests and true objections to the settlement terms support a finding that the proposed settlement is fair and adequate."). The reaction of the Class to the proposed settlement has been positive and evidences the reasonableness of the Settlement. See, e.g., In re Datatec Systems, 2007 WL 4225828, *3 (citing Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118-19 (3d Cir. 1990) (finding that 29 objectors out of 281 Class Members "strongly favors settlement")); In re Smithkline Beckman Corp. Sec. Litig., 751 F. Supp. 525, 530 (E.D. Pa. 1990) ("[b]oth the utter absence of objections and the nominal number of shareholders who have exercised their right to opt out of this litigation militate strongly in favor of approval of the settlement.").

### C.   The Stage of the Proceedings and the Amount of Discovery Completed.

This factor requires the Court to analyze the stage of the proceedings to determine "the degree of case development that class counsel have accomplished prior to settlement." General Motors, 55 F.3d at 813. Essentially, the Court must ensure that the Settlement is not the product of a quick and uniformed decision-making process. Discovery was substantial in this case, including serving and responding to interrogatories and document requests, reviewing thousands of documents and preparing spreadsheets to evaluate the data contained therein, and conducting multiple depositions. Plaintiff also successfully opposed defendant City of Chester's Motion for Summary Judgment, and received a favorable ruling on Plaintiff's Motion for Leave to Amend the Complaint to Assert a Class Action in this matter.

The case was zealously litigated by the parties.  Motion practice was necessary to secure adequate discovery responses.  After Class Counsel assured themselves that they were in possession of the data and information necessary to fairly evaluate the case and prepare for a certification hearing and/or trial, the parties attended a voluntary mediation before retired Federal Judge Stephen M. Orlofsky.  That mediation was not successful, but a subsequent settlement conference conducted by Magistrate Judge Timothy R. Rice helped to significantly narrow remaining differences and disputes.  After extended discussions over the succeeding months, a settlement was ultimately arrived at, and a formal Settlement Agreement was attached as an exhibit to the Joint Motion for Preliminary Approval of Settlement and Provisional Class Certification, filed on January 27, 2021 (ECF 74).

The settlement in this case occurred only after the parties were able to fully assess the evidence and the strengths and weaknesses of their respective cases.  Bonett v. Education Debt Services, Inc., 2003 WL 21658267 (E.D. Pa. 2003).

**D.      The Risks of Establishing Liability and Damages**.

The Court must determine whether the proposed settlement is within a range that experienced attorneys could accept in light of the relevant risks of the litigation.  In re General Motors Corp., 55 F.3d 768, 806 (3d Cir. 1995).  Here, the settlement range is not only within that obtained in other similar cases, but payments to class members actually exceed amounts received in comparable strip search class actions.  See, e.g., Sanchez v. County of Essex, 2016 WL 4577008 (D.N.J. 2016) (maximum award of $325 to class members); Haas v. Burlington County, 2019 WL 413530 (D.N.J. 2019) (maximum payment of $400 to class members).

The payments to class members in the subject case are particularly notable given the risks associated with the alternative of trying this case to verdict.  Class members were, after all,

accused of crimes, and jurors often credit the testimony of law enforcement officials over individuals charged with criminal activity.  Further, the damages claims did not involve any pecuniary loss and essentially represented the emotional reaction to a strip search which was completed in a matter of minutes.  There also exists the not insignificant risk of an adverse ruling on appeal.

Finally, the settlement as a whole has already resulted in significant policy and practice changes adopted by the City of Chester as a result of this litigation.  A checklist is now utilized to assure that there exists reasonable suspicion that an individual is concealing contraband or a weapon before a strip search is conducted.  This policy change could not necessarily have been implemented in the absence of this proposed settlement.  The risks of an adverse liability verdict or a lower damages award, together with limitations on the Court's ability to impose policy changes in how strip searches are conducted by the City of Chester, provide further support for final approval of this settlement.

### E.    The risks of maintaining the class action through trial.

In the absence of a settlement, it is anticipated that defendant City of Chester would vigorously oppose class certification.  Even if the case were certified, it is possible that defendant would seek decertification, either before trial, during trial or on appeal.  See Saunders v. Berks Credit and Collections, 2002 WL 1497374 at *12 (E.D. Pa. July 11, 2002).  While the success of such efforts would be uncertain, the settlement allows plaintiff to avoid the delay and expense that would be associated with such proceedings.  Further, after the Supreme Court's Opinion in Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997), this factor "may not be significant" to a court's determination of the approval of a settlement.  See In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions, 148 F.3d 283, 321 (3d Cir. 1998).

**F.      Ability of the defendant to withstand a greater judgment.**

This factor "is concerned with whether the defendant could withstand a judgment for an amount significantly greater than the settlement." In Re Cendant Corp. Litigation, 264 F.3d 201, 240 (3d Cir. 2001). Here, defendant City of Chester has been placed into receivership in proceedings initiated by the Commonwealth of Pennsylvania. Counsel for defendant maintains that the City of Chester's poor financial condition would significantly limit defendant's ability to pay a judgment in excess of the amounts potentially available to the class. Defendant further contends that its insurance policy only reimburses the City of Chester for payments it has already advanced, further reducing the ability of defendant to pay a significant judgment. This factor favors the settlement entered into in this matter.

**G.      Reasonableness of the settlement in light of the best possible recovery and the attendant risks of litigation.**

In light of the questions of fact and law present in this litigation, the value of the proposed settlement substantially outweighs the mere possibility of a larger recovery. The expense of a trial and the use of judicial resources and the resources of the parties would have been substantial. Moreover, considering the fact of contested liability, even in the event of a favorable outcome for plaintiff, any judgment would have been the subject of post-trial motions and appeals, further prolonging the litigation and reducing the value of any ultimate recovery.

**H.      Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation.**

The fairness of the settlement process and of the Settlement Agreement itself also was shaped by the experience and reputation of counsel, an important factor in final approval of class action settlements. See General Motors, 55 F3d at 787-88; Cotton v. Hinton, 559 F.2d 1326 (5th Cir. 1977); In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 410 F. Supp.

659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); Fisher Brothers v. Phelps Dodge Industries, Inc., 604 F. Supp. 446 (E.D. Pa. 1985) (The professional judgment of counsel involved in the litigation is entitled to significant weight.").

This settlement was specifically negotiated by experienced counsel to meet all of the requirements of Rule 23 as discussed in Amchem, and specifically to provide administrative procedures to assure all Class Members equal and sufficient due process rights.  Accordingly, the Settlement was not the product of collusive dealings, but rather was informed by the vigorous prosecution of the case by experienced and qualified counsel.  Further, continued litigation would be long, complex and expensive, and a burden to court dockets.  Lake v. First National Bank, 900 F. Supp. 726 (E.D. Pa. 1995) (expense and duration of litigation are factors to be considered in evaluating the reasonableness of a settlement); Weiss v. Mercedes-Benz of N. Am. Inc., 899 F. Supp. 1297 (D.N.J. 1995) (burden on crowded court dockets to be considered).

There is no reason to doubt the fairness of the proposed Settlement Agreement.  The Settlement Agreement was the result of months of good faith, arm's length negotiations between experienced and informed counsel on both sides.  A settlement was not reached until after a mediation with a retired Federal Judge and a settlement conference with a Magistrate Judge of this Court.  The Settlement Agreement provides significant compensation to Class Members, comparable or greater than in similar cases, without the necessity of a personal appearance at trial where testimony would be required about the individual's arrest and detention and other unpleasant memories surrounding the strip search.  See Kelly v. Bus. Info. Grp., Inc., No. CV 15-6668, 2019 WL 414915, at *13 (E.D. Pa. Feb. 1, 2019) ("litigation carries several risks which

make a $92 recovery seem appropriate in spite of the $1,000 recovery available under the statute").

The settlement allows plaintiff to avoid the risks described above and ensures an immediate benefit to all Class Members.  Those who believed they would have been entitled to more than that provided by the settlement could have opted out and pursued an independent remedy, but none chose this alternative.  Accordingly, plaintiff submits that the proposed settlement is well within the range of reasonableness, and should be approved.

## VI.    THE PLAN OF DISTRIBUTION OF SETTLEMENT FUNDS IS FAIR.

The "[a]pproval of a plan of allocation of a settlement fund in a class action is 'governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate.'"  In re Ikon Office Solutions, Inc. Sec. Litig., 194 F.R.D. 166, 184 (E.D. Pa. 2000) (citations omitted); see also Walsh v. Great Atl. & Pac. Tea Co., 726 F.2d 956, 964 (3d Cir. 1983) ("The Court's principal obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.").

The Plan of Distribution included in the Settlement Agreement provides that $25,000 be paid as an incentive award to Class Representative Kenard Pitney, and that class counsel will seek an attorneys' fee of $275,000, with class counsel absorbing all expenses of litigation. Under the circumstances, Class Counsel believes and submits that the Plan of Distribution is fair, reasonable and adequate.

### A.    The Incentive Award to Plaintiff Kenard Pitney should be approved.

The Settlement Agreement provides for an incentive award to Class Representative Kenard Pitney of $25,000.  Mr. Pitney agreed to serve as Class Representative in this case.  He devoted significant time and energy to the litigation, including giving deposition testimony and

frequently consulting with class counsel.  Mr. Pitney's deposition included highly personal and potentially embarrassing matters, which he handled with aplomb.

The requested incentive award is consistent with amounts approved in other class actions. See In re Linerboard Antitrust Litigation, 2004 WL 1221350 (June 2, 2004 E.D. Pa.) ($25,000 awarded to each of five class representatives); Sanchez v. Essex County, Bogosian v. Gulf Oil Corp., 621 F. Supp. 27 (E.D. Pa. 1985) (awarding $20,000); Brotherton v. Cleveland, 141 F. Supp. 2d (S.D. Ohio 2001) (awarding $50,000).

The proposed incentive payment to Class Representative Kenard Pitney is fair and reasonable, and will not dilute or reduce the payments to Class Members.  Accordingly, class counsel respectfully requests that the incentive award of $25,000 to Mr. Pitney be approved.

**B.    Class Counsel's Request for Attorneys' Fees is Fair and Reasonable and Should be Approved by the Court.**

Class counsel seeks an award of attorneys' fees in the amount of $275,000.  Defendant City of Chester has agreed not to oppose class counsel's application for attorneys' fees in the amount of $275,000, and will pay the amount that this Court deems appropriate and approves. The payment of counsel fees will not dilute or reduce the payments to Class Members who file timely claim forms. In support of their fee application, the Declarations of Alan M. Feldman and Patrick G. Geckle are attached hereto as Exhibits "C" and "D".

Courts use the "percentage-of-recovery" method in determining attorneys' fees awards in common fund cases, subject to a "lodestar/multiplier" cross-check.  General Motors, 55 F.3d at 821; Rite Aid, 396 F.3d at 300; In re Cendant Corp. Litigation, 264 F.3d 201, 256 (3d Cir. 2001); In re Rent-Way Securities Litigation, 305 F. Supp. 2d 491, 512-13, 516-17 (W.D.Pa. 2003); Erie County Retirees' Ass'n v. County of Erie, 192 F. Supp. 2d 369, 377-78 (W.D. Pa. 2002); Lazy Oil v. Wotco Corp., 95 F. Supp. 2d 290, 322-23 (W.D.Pa. 1997). The Third Circuit has identified

several factors that a district court should consider in determining an award of attorneys' fees. These factors include:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; and (7) the awards in similar cases.

Rite Aid, 396 F.3d at 301 (citing Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n. 1 (3d Cir. 2000)). Each of these factors favors the requested award of attorneys' fees.

First, the Settlement provides for a fund of up to $523,400 for a Settlement Class consisting of 1,010 individuals. Class Members are eligible to receive payments of $1,000, $400 or $100, depending upon whether their charges involved a summary offense, a misdemeanor, or personal use of a small amount of marijuana. The payments to Class Members are substantial and consistent with or greater than payments in comparable Class Actions. This factor weighs in favor of granting the fee request. See, e.g., Erie County Retirees' Ass'n v. County of Erie., 192 F. Supp. 2d 369, 381 (W.D.Pa. 2002) ("Fee awards ranging from thirty to forty-three percent have been awarded in cases with funds ranging from $400,000 to $6.5 million…").

Second, Class Members have received notice of the settlement terms and the amount of attorneys' fees that Class Counsel would be requesting. No objections have been submitted to the attorneys' fee application, and no one has opted out of the settlement. Accordingly, this factor also favors the requested attorneys' fee award. See, e.g., In re AT&T Corp., 455 F.3d 160, 170 (3d Cir. 2006)(district court did not abuse discretion in finding that second factor weighed strongly in favor of approval where there were 8 objections out of one million potential class members).

20

Third, the Class is represented by experienced counsel who have invested time and resources into the prosecution of this action.  Class Counsel have repeatedly sought to widen and expand the Class and the amount of payments Class Members are to receive.  "The fact that not a single objection has been filed to the Settlement…is strong evidence that counsel for the Class have achieved a very good result for the class."  Lan, 2008 WL 763763, *23.

Fourth, the duration of  the litigation also weighs in favor of the award of attorneys' fees.  Counsel have litigated this case for more than two years, obtaining significant discovery of favorable documents and testimony that helped bring about this settlement.

Fifth, the risk of nonpayment is significant.  Class Counsel "undertook this action on a contingent fee basis, assuming a substantial risk that they might not be compensated for their efforts.  Courts recognize the risk of non-payment as a factor in considering an award of attorneys' fees."  In re Datatec Systems, 2007 WL 4225828, *7 (citation omitted); Bredbenner v. Liberty Travel, Inc. No. Civ. A. 09-1248MF, 2011 WL 1344745, at *20 (D.N.J. Apr. 8, 2011) ("[C]lass counsel faces a risk of non-payment due to the difficulty of establishing liability at trial.  Class counsel has prosecuted this case on a contingent basis, with no retainer").

Sixth, Class Counsel have committed approximately 1,049 hours through the course of this litigation to date.  The lodestar is in the approximate amount of $541,501 which is significantly more than the fee Class Counsel have applied for.

Lastly, the requested fee is 33% of the settlement fund.[1]  The requested fee is consistent with that awarded in other class actions.  See Smith v. Dominion Bridge Corp., 2007 WL 1101272 (E.D. Pa. April 11, 2007) (approving fee award equal to 33.3% of $750,000 settlement fund); In re Ravisent Tech., Inc. Securities Litig., 2005 WL 906361 at *10-12 (E.D. Pa. Apr. 18,

---

[1] The settlement fund consists of $523,400 for the claims of class members, $25,000 for an incentive payment to Mr. Pitney and $275,000 in counsel fees, as well as expenses of administration of the settlement.

2005 (fee award equaled 33% of $7 million settlement); <u>Rite Aid</u>, 396 F.3d at 306-07) (review of 289 settlements demonstrates "average attorney's fees percentage [of] 31.71% with a median value that turns out to be one-third"); <u>In re Corel Corp. Inc. Securities Litig.</u>, 293 F. Supp. 2d 484 (E.D. Pa. 2003) (awarding fees equal to 33.3% of $7 million fund); <u>Erie Forge and Steel, Inc. v. Cyprus Minerals Co.</u>, Civ. Action No. 94-404 (W.D. Pa. 1996) (awarding 33.3% fee from $3.6 million recovery; <u>Fox v. Integra Financial Corp.</u>, Civ. Action No. 90-1504 (W.D. Pa. 1996) (33.3% awarded where class recovery was $6.5 million).

Courts confirm the reasonableness of an award based on a percentage of recovery by using the lodestar method.  <u>In re Rite Aid Securities Litigation,</u> 396 F.3d 294, 305-06 (3d Cir. 2005).  The lodestar analysis is performed by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys."  <u>Id</u>. at 305.  As noted previously, the fee applied for by Class Counsel is less than the lodestar, and counsel do not seek a multiplier.  Moreover, counsel have agreed to absorb all expenses of litigation.

Class Counsel respectfully suggests that the counsel fee requested is reasonable in light of the time and labor expended by counsel, the magnitude of the litigation, the risks taken in the litigation, the monetary results achieved for the class, and the amount of the fee in proportion to the monetary settlement and injunctive relief achieved.  Further, this Class Action has brought about a change in policy and practice by the City of Chester, which will no longer conduct strip searches on all detainees admitted to the City of Chester cell block, regardless of whether reasonable suspicion exists for such search.

## VII.  <u>CONCLUSION</u>

For all the foregoing reasons, plaintiff respectfully requests that the Motion for Final

Approval of Class Action Settlement, for an Award of Attorneys' Fees and for Approval of

Incentive Award to the Class Representative be approved.

Respectfully submitted:

LAW OFFICES OF PATRICK G. GECKLE, LLC

/s/ Patrick Geckle
PATRICK GECKLE
1515 Market Street, Suite 1200
Philadelphia, PA  19102
215-735-3326

FELDMAN SHEPHERD WOHLGELERNTER
TANNER WEINSTOCK & DODIG, LLP

_____
ALAN M. FELDMAN
EDWARD S. GOLDIS
ANDREW K. MITNICK
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
215-567-8300

Attorneys for Plaintiff and the Class

23

# EXHIBIT "A"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KENARD PITNEY, both individually    :
and on behalf of a class of other similarly    :
situated individuals,    :
    :
                    Plaintiff,  :  CIVIL ACTION
    :
              v.          :  DOCKET NO. 2:19-cv-799
    :
CITY OF CHESTER,    :
    :
              Defendant.  :

### [PROPOSED]
### ORDER GRANTING FINAL APPROVAL
### OF CLASS ACTION SETTLEMENT AND JUDGMENT

**THIS CASE**, coming on for hearing before the Honorable Judge Paul S.

Diamond on May 17, 2021, pursuant to this Court's Order of February 3, 2021, in order

for this Court to conduct a final fairness hearing to determine whether the proposed

Settlement Agreement between the parties is fair, reasonable and adequate, and to address

Class Counsel's application for an award of attorneys' fees and an incentive award to the

Class Representative; and the Class Members being represented by Class Counsel and

Defendant being represented by its attorneys;

**AND THE COURT** having read and considered the Settlement Agreement, the

Notice Plan, the Memorandum of Law submitted by Class Counsel and the Declarations

of Alan M. Feldman and Patrick Geckle, two of the attorneys acting as Class Counsel, in

support of the Settlement, having received evidence at the hearing, having heard

arguments from Class Counsel and the Defendant, and having considered all matters

heretofore presented in this case, now makes the following:

**FINDINGS OF FACT**

1.      This action was commenced on February 25, 2019, with the filing of Plaintiff's Complaint.

2.      On May 27, 2020, Plaintiff filed an Amended Complaint asserting this matter as a class action.

3.      After approximately two (2) years of litigation, including dispositive and class certification motion practice and an intensive, arm's length negotiation between Class Counsel and Defendant, including a mediation, settlement conference and multiple discussions between Class Counsel and counsel for Defendant, the parties have reached accord with respect to a Settlement that provides substantial benefits to Class Members, in return for a release and dismissal of the claims at issue in this case against the Defendant.  The resulting Settlement Agreement was preliminarily approved by the Court on February 3, 2021.

4.      As part of the Order Granting Preliminary Approval, this Court approved a proposed Notice Plan and Class Notice, which provided Class Members notice of the proposed settlement.  The Notice Program provided an opportunity for Class Members to file objections to the Settlement, and an opportunity to opt-out of the Settlement.

5.      As of the deadline for the filing of objections, no objections were filed. Given the size of this Settlement, and the Notice Program described above, this Court finds that the absence of objections is indicative of the fairness, reasonableness and adequacy of the Settlement with the Defendant.

6.      Class Counsel has filed with the Court an affidavit from the Settlement Administrator describing the notice provided to the Class as provided in the Settlement

Agreement, together with the response thereto.

7.     The Court finds that the Notice Program, as effectuated, constituted the best practicable notice of the Fairness Hearing, proposed Settlement, Class Counsel's application for fees, the proposed payment to the Class Representative and other matters set forth in the Class Notice and Short Form Notice; and that such notice constituted valid, due and sufficient notice to all members of the Class, and complied fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States, the laws of Pennsylvania and any other applicable laws.

8.     Any persons who wished to be excluded from the settlement of this action were provided with an opportunity to exclude themselves or "opt-out" pursuant to the Notice.  No individuals opted out of the settlement.

9.     Settlement Class Members are bound by the: Settlement, Settlement Agreement, releases contained within the Settlement Agreement, and the Final Order and Judgment. Settlement Class Members do not have a further opportunity to opt-out of this Action.

10.     Any Class Member who did not timely file and serve an objection in writing to the Settlement Agreement, to the entry of Final Order and Judgment, or to Class Counsel's application for fees, in accordance with the procedure set forth in the Class Notice and mandated in the Order Granting Preliminary Approval of Settlement, is deemed to have waived any such objection by appeal, collateral attack, or otherwise.  No individuals filed an objection.

11.     On the basis of all of the issues in this litigation, and the provisions of the Settlement Agreement, the Court is of the opinion that the Settlement is a fair, reasonable

and adequate compromise of the claims against the Defendant in this case, pursuant to Rule 23 of the Federal Rules of Civil Procedure.  There are a number of factors which the Court has considered in affirming this Settlement, including:

a.      The liability issues in this case have been vigorously contested.

b.      This Settlement has the benefit of providing relief to Class Members now, without further litigation, under circumstances where the liability issues are still vigorously contested between the parties to this litigation. This Settlement provides Class Members with a substantial monetary benefit.

c.      The Settlement has also brought about a significant change in the strip-search policy and procedures of the City of Chester, which now protects the constitutional rights of class members and all other persons against unreasonable searches conducted without reasonable suspicion that the person arrested or detained is concealing contraband or a weapon.

d.      This Settlement is clearly a product of hard-fought litigation between the parties, and not a result of any collusion on the part of Class Counsel or Counsel for the Defendant.

12.     The claims procedure established under the Settlement Agreement is a fair, simplified and workable process. In any event, the Court will retain jurisdiction to work out any unanticipated problems.

**NOW, THEREFORE, ON THE BASIS OF THE FOREGOING FINDINGS OF FACT AND THE COURT HEREBY MAKES THE FOLLOWING CONCLUSIONS OF LAW:**

13.     This Court has jurisdiction over the parties and the subject matter of this

proceeding.

14.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the following

Class is certified for purposes of final settlement:

> All persons who have been (1) detained in a holding cell at
> the City of Chester Police Department (2) as a result of
> being arrested and/or charged with summary offenses, civil
> enforcement offenses, child support enforcement arrears,
> traffic offenses, disorderly conduct offenses, contempt
> proceedings, non-violent misdemeanor offenses in which a
> weapon was not utilized nor brandished and/or no injury
> was caused to an individual, misdemeanors not involving
> drugs or controlled substances (exclusive of possession of a
> small amount of marijuana for personal use), failure to pay
> financial fines, penalties and/or costs in like matters as set
> forth above; and/or failure to appear at any court
> proceedings on like matters as set forth above; and (3) who
> were strip searched upon their entry into detainment and/or
> custody and/or were strip searched prior to an appearance
> before a judge or judicial officer who had the authority to
> release the person as referred to above from detainment
> and/or custody; and (4) the strip search was conducted
> and/or performed pursuant to the City of Chester's strip
> search policy regardless of circumstances indicative of
> reasonable suspicion. The Class Period commences on
> February 25, 2017 and ends on December 9, 2020.

15.    The Court finds that, for the purpose of this Settlement, the requirements

of Rule 23 of the Federal Rules of Civil Procedure are satisfied, and that a class action is

an appropriate method for resolving the disputes in this litigation. All the prerequisites for

class certification under Rule 23 are present. The Class Members are ascertainable and

too numerous to be joined. Questions of law and fact common to all Class Members

predominate over individual issues and should be determined in one proceeding with

respect to all Class Members. The Class Representative's claims are typical of those of

the Class Members. The Class action mechanism is superior to alternative means for

adjudicating and resolving this action.

16.     The Class Representative, Kenard Pitney, is entitled to and is hereby awarded a payment of $25,000, in recognition of the efforts he undertook in connection with this lawsuit.

17.     All Class Members who have made claims on the settlement are entitled to receive their settlement payment as provided by the Settlement Agreement, without regard to administrative expenses, attorneys' fees and expenses, and the incentive award to Mr. Pitney.

18.     Class Counsel are qualified, experienced, and have aggressively litigated this case, thereby demonstrating their adequacy as counsel for the Class Members. Patrick G. Geckle, Esq, of The Law Offices of Patrick G. Geckle, LLC, Philadelphia, Pennsylvania; and Alan M. Feldman, Edward S. Goldis, and Andrew K. Mitnick of Feldman Shepherd Wohlgelernter Tanner Weinstock & Dodig, LLP, Philadelphia, Pennsylvania, are hereby appointed as Counsel for the Class Members. Class Counsel submitted to the Court and served on the Defendant their application for reasonable attorneys' fees, consistent with the terms of the Settlement Agreement. The Court finds that final approval of attorneys' fees in the amount of $275,000 is warranted.  The Court finds that this amount is justified by the work performed, the skill and experience of counsel, the risks taken and the results achieved by Class Counsel.  The Court also notes that Class Counsel has agreed to absorb the costs of litigation incurred in this case.

19.     The Court finds that the payment of the incurred and anticipated expenses of the Settlement Administrator as set forth in the Certification of Jason Stinehart is reasonable and justified.

20.     The Court grants final approval of the Settlement Agreement, as being

fair, reasonable and adequate, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

**NOW, THEREFORE, ON THE BASIS OF THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1.      The Motion for Final Approval of the proposed Settlement is GRANTED.

2.      The Class Representative, Kenard Pitney, is entitled to and is hereby awarded a payment of $25,000, subject to the terms of the Settlement, in recognition of the efforts he undertook in connection with this lawsuit.

3.      All Class Members who have made claims on the settlement are entitled to receive their share of the Settlement Fund as provided by the Settlement Agreement.

4.      The Class Counsel's application for attorneys' fees and expenses is granted in the amount of $275,000 in fees, and the Settlement Administrator is ordered upon Final Approval to pay such amounts to Alan M. Feldman of Feldman Shepherd Wohlgelernter Tanner Weinstock & Dodig, LLP for disbursement to the Class Counsel's law firms.

5.      The costs and expenses incurred to date or hereafter incurred for finalization of the Settlement by the Settlement Administrator are to be paid by Defendant City of Chester, and the Settlement Administrator can disburse to itself from the Settlement Funds such funds, upon approval by Class Counsel and Defendant, with any balance to be paid by Defendant City of Chester.

6.      This Action and all claims against the Defendant are hereby dismissed

with prejudice, but the Court shall retain exclusive and continuing jurisdiction of the Action, all Parties, and Class Members, to interpret and enforce the terms, conditions and obligations of this Settlement Agreement.

7.      All Class Members who have not timely filed an opt-out request are barred and enjoined from commencing and/or prosecuting any claim or action against the Defendant. Any Class Member who has not timely filed a request to exclude himself or herself shall be enjoined from initiating and/or proceeding as a class action in any forum.

**IT IS SO ORDERED.**

Dated: _____                              _____
                                                 Paul S. Diamond, J.
                                                 United States District Judge, E.D.Pa.

# EXHIBIT "B"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENARD PITNEY, both individually and on behalf of a class of other similarly situated individuals, | : : : | |
| | : | |
| Plaintiff, | : : | Civil Action Docket Number:  2:19-cv-799 |
| v. | : : | |
| CITY OF CHESTER, | : : | |
| Defendant. | : : | |
| _____ | : | |

## DECLARATION OF JASON M. STINEHART

1.      I am a Program Manager at Rust Consulting, Inc. ("Rust"), which serves as the Settlement Administrator for the above-captioned Action.  I am responsible for supervising the services provided by Rust for this matter.  I am over the age of 21 and am otherwise competent to make this declaration.  The following statements are based on my personal knowledge and information provided by other experienced Rust employees working under my direct or indirect supervision.

2.      Rust has provided services in more than 7,500 class action cases, ranging in size from fewer than 100 class members to 100 million class members, in cases involving antitrust, securities fraud, property damage, employment discrimination, product liability, insurance and consumer issues.  Rust was appointed by the Court as the Settlement Administrator.  Rust's administrative responsibilities include the following:

> (a) mail the Class Notice and Claim Form via U.S. Mail to all Settlement Class Members at the addresses provided by the City of Chester, as updated by the National Change of Address ("NCOA") resources offered by the United States Postal Service ("USPS");

> (b) arrange for publication of the Summary Notice in the *Delaware County Daily Times*;

> (c) establish a website setting forth information about the Settlement on which copies of the Agreement, the Preliminary Approval Order, the Class Notice, and the Claim Form in either English or Spanish may be viewed or printed;

(d) establish an automated toll-free telephone number, by means of which Class Members may obtain pre-recorded information regarding the Settlement and request a copy of the Class Notice and Claim Form;

(e) process Opt-Out Requests submitted by Class Members;

(f) process Claim Forms.

3.      Defense counsel provided Rust with the Class List on February 5, 2021, containing names and mailing addresses, for 1,010 Settlement Class Members.  Prior to mailing, Rust submitted the Class List through the USPS NCOA database.  The NCOA database contains requested changes of address which have been filed with the USPS and are currently in effect within the past 48 months.

4.      On March 5, 2021 Notice of Settlement and Claim Forms were mailed to 1,010 Class Members via First-Class U.S. Mail.  A copy of the Notice of Settlement and Claim Form is attached as Exhibit A.

5.      As of May 2, 2021, 197 Notices have been returned as undeliverable.  Of these returned Notices, 9 had valid forwarding addresses and 188 did not.

6.      If the returned Notice included forwarding information provided by the USPS, an additional Notice was mailed to the forwarding address.  For returned Notices with no forwarding address, Rust used standard skip-trace resources to try to obtain a new address. Through this process Rust re-mailed 123  Notices to Settlement Class Members.  As of May 2, 2021, 3 re-mailed Notices have been returned a second time.

7.      Rust coordinated placement of the Summary Notice in the *Delaware County Daily Times*.  The Summary Notice ran on three dates:  March 5, 2021, March 8, 2021, and March 15, 2021.  A final insert is scheduled to run on June 24, 2021.

8.      On March 4, 2021, Rust established an automated toll-free number at 1-866-647-4187 with pre-recorded information in both English and Spanish concerning the Settlement.  The toll-free number includes functionality allowing callers to request a copy of the Class Notice and Claim Form.   As of May 2, 2021, there have been 45 calls to the toll-free number.

9.      Also on March 4, 2021, Rust established a website www.cityofchesterstripsearch.com where Settlement Class Members can download a Claim Form in either English or Spanish to be submitted by U.S.

Mail, or can file their claim online.  Complete copies of the Settlement Agreement and the Preliminary Approval Order can also be viewed and downloaded on the Settlement website.  As of May 2, 2021, there have been 2,276 unique visitors to the website.

10.     As Settlement Administrator, Rust is responsible for receiving and compiling opt-out requests.  Rust has received no requests to opt-out of the Settlement.

11.     As Settlement Administrator, Rust is responsible for receiving and compiling objections.  Rust has received no objections to the Settlement.

12.     The deadline for Claim Forms to be postmarked or submitted via the website is July 3, 2021.  As of May 2, 2021, Rust has received 43 claim forms.

13.     The cost of administering the Settlement, through April 30, 2021, has been $48,805.

I declare under penalty of perjury the foregoing is true and correct.  This declaration was executed on May 4th, 2021 at Minneapolis, Minnesota.

Jason M. Stinehart

# EXHIBIT A

Pitney v Chester Settlement Administrator
c/o Rust Consulting, Inc. – 7225
PO Box 44
Minneapolis MN 55440-0044

## IMPORTANT LEGAL MATERIALS

||||||||||||| *C L M N T   I D N O*   ||||||||||||  UAA  <<SequenceNo>>

<<Name 1>>
<<Name2>>
<<Name3>>
<<Name4>>
<<Address1>>
<<Address2>>
<<City>> <<State>> <<Zip10>>
<<CountryName>>

**CLASS MEMBER ID: <<clmntid>>**

*PITNEY v. CITY OF CHESTER*, Civil Action No.: 2:19–CV– 799 (E.D.Pa.)

# CLAIM FORM AND RELEASE

### PLEASE READ THESE INSTRUCTIONS AND CLAIM FORM CAREFULLY

To determine if you are eligible to receive money from the Settlement, you must fill out the Claim Form and Release ("Claim Form"). The Claim Form is attached at the end of these instructions. The completed and signed Claim Form *must be postmarked by July 3, 2021. If you do not send it in by July 3, 2021, you will not get any money. You must sign on the last page.* If you are submitting by mail, you must submit it in the enclosed envelope or another properly addressed, postage prepaid envelope to the following address:

> Pitney v Chester Settlement Administrator
> c/o Rust Consulting, Inc. – 7225
> PO Box 44
> Minneapolis MN 55440-0044

You may call our toll-free number at  1-866-647-4187 for more information.

**It is highly recommended that you send it by Certified Mail, Return Receipt Requested or a form of overnight delivery that will provide proof that it was delivered.  If a claim form is lost in the mail or not received for any reason, you will not be able to receive any money.  We have also arranged for the submission of claims forms on an online portal at www.cityofchesterstripsearch.com.**

If you have any questions about how the Settlement Fund will be divided up, you should write or call the Settlement Administrator at the above toll-free number, or visit our dedicated website at www.cityofchesterstripsearch.com.

All Settlement Class Members who do not exclude themselves are bound by the terms of the judgment. This is true whether you send in a Claim Form or not.

If you have asked to be excluded, **do not** submit a Claim Form.

### WHO IS IN THE SETTLEMENT CLASS?

You are in the "Settlement Class" if you satisfy ALL of the following four (4) conditions:

1.  You were arrested and detained in a holding cell at the City of Chester Police Department;

2.  You were charged only with a Summary offense, a civil enforcement offense, child support enforcement arrears, a traffic offense, contempt proceedings offense, a non-violent misdemeanor offense in which a weapon was not utilized nor possessed and/or no injury was caused to an individual, a misdemeanor not involving drugs or controlled substances (exclusive of possession of a small amount of marijuana for personal use);

3.  You were strip searched; AND

4.  You were strip searched during the period of February 25, 2017 through December 9, 2020.

**If you have questions about these requirements, review the Class Notice.**

| CLAIM FORM INSTRUCTIONS |
|---|

A.  Please type or neatly print all the information that is asked for.

B.  If you believe you are entitled to money from the Settlement Fund you must complete Part 1 of the Claim Form and the additional parts of the Claim Form that apply to you.

C.  By signing below, you are verifying, under penalty of perjury, that the information you have included is correct. You also agree to provide additional information to Class Counsel or the Settlement Administrator to support your claim. They may ask you to do this in the future.

D.  By signing below you are also verifying that you have not filed a claim or lawsuit about being strip searched at the cellblock of the City of Chester Police Department, that you did not ask anyone else to file one for you, and that you don't know of anyone who might have filed one for you.

E.  **Please read the instructions carefully.** Your claim will be checked and verified by the Settlement Administrator. You should keep copies of all documents that support your claim while this is going on.

F.  A Claim Form will be considered submitted to the Settlement Administrator if it is mailed in a first-class envelope postmarked by the due date, or submitted online prior to the due date. **You may want to send in your Claim Form by Certified Mail, Return Receipt Requested or a form of overnight delivery that provides a record of delivery, or submit it online at our dedicated website www.cityofchesterstripsearch.com**. If you send the Claim Form to the Settlement Administrator in some way other than first-class mail or via the website, the Claim Form will be considered "submitted" when it is received by the Settlement Administrator.

G.  The Settlement Administrator will not tell you when they get your Claim Form. If you want to make sure the Settlement Administrator gets your form, you should send it by Certified Mail, Return Receipt Requested. It will take some time to process all the forms and send the checks. This work will be done as fast as possible, but each claim must be checked for accuracy and recorded.

H.  Please write or call the Settlement Administrator if your address changes.


**THE CLAIM FORM MUST BE FILLED OUT AND SIGNED IF YOU WANT TO DETERMINE IF YOU ARE ENTITLED TO GET MONEY FROM THE SETTLEMENT FUND. THE ENVELOPE MUST BE** *POSTMARKED NO LATER THAN JULY 3,* **2021, AND MUST BE MAILED TO:**

> **Pitney v Chester Settlement Administrator**
> **c/o Rust Consulting, Inc. – 7225**
> **PO Box 44**
> **Minneapolis MN 55440-0044**

Pitney v Chester Settlement Administrator
c/o Rust Consulting, Inc. – 7225
PO Box 44
Minneapolis MN 55440-0044

## IMPORTANT LEGAL MATERIALS

 UAA <<SequenceNo>>

FOR OFFICIAL USE ONLY

01

Page 1 of 2

<<Name1>>
<<Name2>>
<<Name3>>
<<Name4>>
<<Address1>>
<<Address2>>
<<City>> <<State>> <<Zip10>>
<<CountryName>>

# CLAIM FORM

### *PITNEY v. CITY OF CHESTER*

### PART 1: CLAIMANT IDENTIFICATION

Claimant's Name: _____

Mailing Address: _____

City: _____ State/Country: _____ Zip Code: ___ ___ ___ ___ ___

Date of Birth: ___ ___ / ___ ___ / ___ ___ ___ ___

Social Security No.: ___ ___ ___ - ___ ___ - ___ ___ ___ ___

Date(s) of Arrest(s) if known.  Please say so if the date(s) you give is an estimate.  Please note that only persons arrested between February 25, 2017 through December 9, 2020, who were strip searched and detained in the City of Chester cell block area may qualify as Claimants.

_____   _____   _____   _____

☐  Actual Date(s)

☐  Estimated Date(s)

All criminal charges or reasons for arrest(s), if known (i.e. Summary offense, violation of probation, Family Court warrant):

_____

*(If you do not know what the charges against you were, but believe you are still a Class Member, you should file a claim. We will get your arrest record from the City of Chester. You may still be asked to provide more information about your case.)*

☐  Please check this box to signify that you were subjected to a strip search upon that admission to the City of Chester cell block.

☐  Please check this box to signify that you were not arrested for a felony offense, a violent offense, an offense involving possession or use of a weapon, or an offense involving possession or use of a controlled substance other than the possession of a small amount of marijuana for personal use upon that admission to the City of Chester cell block.





Telephones:

( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___ (daytime)

( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___ (cell)

( ___ ___ ___ ) ___ ___ ___ - ___ ___ ___ ___ (evening)

## SUBMISSION TO JURISDICTION OF THE COURT

By signing below, I agree that the United States District Court for the Eastern District of Pennsylvania has the power to rule on my claim as a Settlement Class Member, and that the Court has the power to enforce the Release described below.

## RELEASE

By signing below, you acknowledge the release and discharge of the Defendant, and all of their respective parents, subsidiaries, affiliates, predecessors, successors and assigns, officers, agents, representatives, attorneys and employees, from any and all claims or causes of action that were, could have been, or should have been asserted by the named Plaintiff or any member of the Settlement Class against the Released Persons, or any of them, based upon or related to strip searches in the City of Chester cell block area.

## VERIFICATION

I declare under penalty of perjury under the laws of the United States that the foregoing information provided by the undersigned is true and correct. I also declare that I was strip searched when I was admitted into the City of Chester cell block area for a summary offense, a non-violent misdemeanor offense, or a non-drug misdemeanor offense (excluding the possession of a small amount of marijuana for personal use).

I filled out and signed this Proof of Claim and Release form on _____ , 20____, in

_____ (City, State, Country).


_____
(Sign your name here)


_____
(Type/Print your name here)

**Legal Notice**
**United States District Court for the Eastern District of Pennsylvania**
<u>**NOTICE OF PROPOSED SETTLEMENT AND HEARING**</u>

**If You Were Admitted Into The City of Chester Cell Block Area From February 25, 2017 Through December 9, 2020 For a Summary Offense Or A Misdemeanor Offense Not Involving Violence, Possession/Use Of A Weapon, Or Possession Of A Controlled Substance Other Than Marijuana For Personal Use And Were Strip Searched Upon Arrival, Your Rights Could Be Affected By A Proposed Class Action Settlement.**

*The United States District Court for the Eastern District of Pennsylvania authorized this notice. It is not from a lawyer. You are not being sued.*

This is a proposed settlement of a class action lawsuit alleging that police officers employed at the City of Chester engaged in the strip searches of all individuals charged only with summary offenses, violations of probation, traffic infractions, non-violent and non-drug misdemeanor offenses, or other minor crimes, including failure to pay fines, and were strip searched upon their entry to the City of Chester Police Department cell block area from February 25, 2017 through December 9, 2020. The proposed settlement does not include individuals who were charged with felony offenses, misdemeanor offenses involving violence against another person or possession/use of a weapon, or misdemeanor drug offenses other than possession of a small amount of marijuana for personal use at the time of their admission to the City of Chester Police Department cell block area, or who were not strip searched when they entered the City of Chester cell block area.

◦ The settlement requires the City of Chester to pay Each Class Member, whose highest graded charge constituted a summary offense, who submits a timely Claim Form will be entitled to a $1,000.00 payment. Class Members arrested and processed on non-violent and non-drug offenses will be entitled to a payment of $400.00. Finally, Class Members arrested and processed on the misdemeanor offense of possession of a small amount of marijuana for personal use will be entitled to a payment of $100.00. If a Class Member owes child support, or owe costs or fines owed as a result of an adjudication by any of the Courts of the Commonwealth of Pennsylvania, their payment under this Settlement will be credited towards their child support debt or costs or fines owed.

◦ Visit the settlement website at **www.cityofchesterstripsearch.com** for additional details about the settlement. You may also get additional information by calling **1-866-647-4187** or by writing to *Pitney v Chester Settlement Administrator, c/o Rust Consulting, Inc. – 7225, PO Box 44, Minneapolis MN 55440-0044*.

◦ Your legal rights are affected whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **Submit a Claim Form** | You must submit a Claim Form to receive payment under the settlement. **You must submit a Claim Form by July 3, 2021 to receive any money.** |
| **Exclude Yourself** | If you exclude yourself from the settlement, you will not be bound by the settlement or judgment and will not be entitled to a cash payment. You will be free to pursue your claims against the Defendant. This is the only option that allows you to bring or be part of any other lawsuit against the Defendant in this case about the same legal claims that are advanced in this case. **You must exclude yourself from the settlement by April 19, 2021.** |
| **Object** | If you do not exclude yourself, you may write to the Court about why you do not like the settlement or the request for legal fees and costs. **You must send a written objection to the Court postmarked no later than April 19, 2021.** |
| **Go to a Hearing** | If you submit a Claim Form or if you object, you may also ask to speak in Court at the Fairness Hearing (described below) about the fairness of the settlement or the request for fees and costs. You do not need to go to the hearing if you do not wish to. You do not need to go to the hearing if you submit a Claim Form, or if you exclude yourself or if you object. |
| **Do Nothing** | You get **no** payment. You give up your right to sue Defendant on these claims later. |

◦ These rights and options – **and the deadlines to exercise them** – are explained in this notice.

◦ The Court in charge of this case still must decide whether to give final approval to the settlement. Likewise, payments to Class Members will be distributed only if the Court grants final approval of the settlement and after any appeals are resolved.

### I. WHY DID I GET THIS NOTICE PACKAGE?

You or someone in your family may have been admitted to the City of Chester Police Department cell block on a summary offense (such as a disorderly conduct or public drunkenness, traffic infraction, and/or civil commitment), or a non-violent, non-drug misdemeanor offense from February 25, 2017 through December 9, 2020 and may have been subjected to a strip search.

You were sent this notice because you have the right to know about a proposed settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the settlement. If the Court approves it, and after any possible objections and appeals are resolved, an administrator appointed by the Court will make the monetary payments that the settlement allows. You will be informed of the progress of the settlement. You should understand that the process of Court approval may take a good deal of time.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them and how to get them.

The Court in charge of this case is the United States District Court for the Eastern District of Pennsylvania, United States District Judge Paul Diamond presiding. The case is called *Pitney v. City of Chester*, Civil No. 2:19-cv-799. The person who sued is called the Plaintiff and the municipality he sued, the City of Chester, is called the Defendant.

### II. WHAT IS THIS LAWSUIT ABOUT?

Plaintiff claims in this lawsuit that the City of Chester illegally strip searched individuals upon their admission to the City of Chester cell block who were charged solely with summary offenses (such as disorderly conduct or public drunkenness, traffic infractions, and/or civil commitments), or misdemeanor offenses not involving violence, weapons, or drugs other than possession of a small amount of marijuana in violation of the unreasonable search provisions of the United States and Pennsylvania Constitutions. Defendant denies that it did anything wrong and has contended through this lawsuit that even if it did do anything wrong, Plaintiff and the Class Members are not entitled to any money as a result of being searched.

### III. WHY IS THIS A CLASS ACTION?

In a class action, one or more people, called the Class Representatives (in this case, Kenard Pitney) sue on behalf of all people who have similar claims. All of these people are a Class or Class Members. A class action resolves the issues for all Class Members, except for those who exclude themselves from the Class. United States District Court Judge Paul Diamond is in charge of this class action lawsuit.

### IV. WHY IS THERE A SETTLEMENT?

The Court did not decide in favor of Plaintiff or Defendant. Instead, both sides agreed to a settlement. That way, they avoid the costs and risks of a trial, and the people affected will get compensation. The Class Representative and his attorneys think the settlement is best for everyone who is alleged to have been illegally strip searched.

### V. HOW DO I KNOW IF I AM PART OF THE SETTLEMENT?

Under the settlement, everyone who fits this description is a Class Member:

> All persons who have been (1) detained in a holding cell at the City of Chester Police Department (2) as a result of being arrested and/or charged with summary offenses, civil enforcement offenses, child support enforcement arrears, traffic offenses, disorderly conduct offenses, contempt proceedings, non-violent misdemeanor offenses in which a weapon was not utilized nor brandished and/or no injury was caused to an individual, misdemeanors not involving drugs or controlled substances (exclusive of possession of a small amount of marijuana for personal use), failure to pay financial fines, penalties and/or costs in like matters as set forth above; and/or failure to appear at any court proceedings on like matters as set forth above; and (3) who were strip searched upon their entry into detainment and/or custody and/or were strip searched prior to an appearance before a judge or judicial officer who had the authority to release the person as referred to above from detainment and/or custody; and (4) the strip search was conducted and/or performed pursuant to the City of Chester's strip search policy regardless of circumstances indicative of reasonable suspicion.

The Class Period commences on February 25, 2017 and ends on December 9, 2020.

The settlement does not cover individuals charged with a felony, violent misdemeanor, misdemeanor drug offenses other than possession of a small amount of marijuana for personal use at the time of their entry into the City of Chester cell block, or anyone who entered the cell block facility after being convicted of (as compared to only being charged with) a crime.

## VI. DO I NEED TO PROVE THAT I WAS STRIP SEARCHED AND WHAT DOES THAT MEAN?

In filling out the Claim Form, you will affirm, under penalty of perjury, that you were strip searched during the admission process at the City of Chester cell block. If your name is not contained in the City of Chester's records, you may be asked to provide additional documentation before being allowed to participate in the settlement.

A strip search occurred if, during the admission process, you were ordered to remove or rearrange your clothing for a visual inspection of your undergarments, buttocks, anus, genitals and/or breasts. If you were searched in this manner when you were booked into the facility and you were charged with a top line charge as outlined above, you are a member of the Class and entitled to make a claim. A strip search did not occur if the removal or rearrangement of your clothing was reasonably required to render medical treatment or assistance. You will need to provide an affirmation on the Claim Form confirming that one of these searches was conducted on you when you entered the City of Chester Police Department cell block.

## VII. HOW DO I KNOW WHETHER THE OFFENSE FOR WHICH I WAS CHARGED UPON ADMISSION TO THE CITY OF CHESTER CELL BLOCK QUALIFIES ME FOR INCLUSION IN THE CLASS?

You must have been brought to the City of Chester Police Department cell block before a judge had sentenced you (pre-adjudication) to be eligible to recover, and all of the charges must have been summary offenses, non-violent misdemeanor offenses, misdemeanor offenses not involving possession or use of a weapon, and/or misdemeanor offenses not involving the possession or use of a controlled substance other than the possession of a small amount of marijuana for personal use. Everyone brought to the City of Chester Police Department cell block pre-adjudication based solely on such offenses and who were strip searched upon admission are eligible under this Settlement Agreement.

Stated another way, persons who were charged with offenses graded as a felony in the Commonwealth of Pennsylvania, or offenses graded as a misdemeanor, but involving violence against another individual, the use/possession of a weapon, or the possession of a controlled substance other than the possession of a small amount of marijuana for personal use when they were admitted to the City of Chester Police Department cell block cannot recover. Anyone charged with an offense constituting a felony in the Commonwealth of Pennsylvania, or offenses graded as a misdemeanor, but involving violence against another individual, the use/possession of a weapon, or the possession of a controlled substance other than the possession of a small amount of marijuana for personal use upon admission to the City of Chester Police Department cell block, even if they were also charged with summary offenses at the same time, is not a member of the class unless they were, on another occasion, admitted to the City of Chester Police Department cell block solely on one of the above identified offenses.

Examples of summary offenses are disorderly conduct, public drunkenness, harassment, loitering, traffic offenses, and violation of child support orders. Examples of non-violent, non-drug misdemeanor offenses include misdemeanor theft, driving under the influence of alcohol or controlled substance, and fleeing/eluding a police officer. Anyone charged only with offenses as described above as their top line charge and upon admission to the City of Chester Police Department cell block was strip searched is a member of the Class.

Finally, if a person was arrested and brought to the City of Chester Police Department cell block under traffic offenses or traffic warrants, failing to pay fines and contempt, pre-adjudication, they are eligible under the Settlement Agreement if they were strip searched. Consequently, if you failed to honor a payment order with a municipal court and were arrested, or failed to appear for a municipal court date and arrested, brought to the City of Chester Police Department cell block and strip searched, you are eligible to receive a settlement payment.

The City of Chester maintains that it had appropriate cause to strip search individuals charged with the misdemeanor drug offense for possession of a small amount of marijuana for personal use when they entered the City of Chester Police Department cell block. The Plaintiff disagreed, and the parties resolved claims for individuals charged with possession of a small amount of marijuana for personal use for a lesser amount. Consequently, if you were charged with possession of a small amount of marijuana for personal use (and this was your only charge during the class period), you are still a Class Member, but you will receive a reduced payment.

## VIII. I WAS ADMITTED TO THE CITY OF CHESTER POLICE DEPARTMENT CELL BLOCK BUT I CANNOT REMEMBER WHAT MY CRIMINAL CHARGES WERE. HOW CAN I FIND THIS OUT, AND HOW DO I KNOW IF THE CHARGE WAS A MISDEMEANOR OR SUMMARY OFFENSE?

There are several ways for potential Class Members to determine the nature of their criminal charges. First, you can review your charging documents, which should reflect both your actual charges and the gradation of the offenses. If you do not have your charging document and remember the local court where you were prosecuted, the court clerk will be able to help you find these documents. Finally, Pennsylvania's Unified Judicial System (https://ujsportal.pacourts.us/) is a public resource which can be utilized to look up public records, including charges and dispositions, for criminal offenses throughout the Commonwealth.

If you need additional help determining whether you are a Class Member, or if you have other questions, you can contact the Settlement Administrator at 1-866-647-4187.

You can still submit a claim form if you do not remember your criminal charges if you believe you are a member of the Class, but you may be asked for additional information.

### IX. I PLED GUILTY TO AN OFFENSE. HOW DOES THIS AFFECT MY RIGHT TO PARTICIPATE IN THE SETTLEMENT?

If you were admitted to the City of Chester Police Department cell block solely on a summary offense, non-violent or non-drug misdemeanor, or other minor charges, as defined above, you can participate in the settlement regardless of how you resolved your charges, including if you pled guilty to those charges. This is provided that you were admitted to the City of Chester Police Department cell block before being sentenced by a court. For most Class Members, this would mean that they were admitted to the City of Chester Police Department cell block after they were arraigned before a judge. If you were sentenced before admission to the cell block (meaning you were committed after pleading guilty or being convicted at trial) you are not a Class Member.

### X. WHAT IF I WAS ADMITTED TO THE CITY OF CHESTER POLICE DEPARTMENT CELL BLOCK ON MORE THAN ONE OCCASION DURING THE CLASS PERIOD? CAN I STILL PARTICIPATE IN THE SETTLEMENT?

Yes. Individuals who were admitted to the City of Chester Police Department cell block on more than one occasion during the class period can be members of the class and can recover money. They can only recover one payment, however, meaning that you will not be provided with extra payments if you were admitted to the City of Chester Police Department cell block more than one time.

### XI. I AM STILL NOT SURE IF I AM INCLUDED.

If you are still not sure if you are included, you can ask for help. You can call **1-866-647-4187** and the Settlement Administrator or Class Counsel may help answer your questions. For more information, you can also visit the website, **www.cityofchesterstripsearch.com,** or you can just fill out the Claim Form and return it to the Settlement Administrator to see if you qualify.

### THE SETTLEMENT BENEFITS - WHAT YOU GET

### XII. WHAT DOES THE SETTLEMENT PROVIDE?

Defendant has agreed to pay individuals with a Summary as their highest graded offense who submits a timely Claim Form will be entitled to receive $1,000.00. Class Members arrested and housed in the cell block area on a highest graded offense which constitutes a misdemeanor, except those misdemeanors involving drug offenses or violent offenses involving physical harm to an individual or use/possession of a weapon of any kind, who submits a timely Claim Form will be entitled to receive $400.00. Class Members arrested and housed for possession of a small amount of marijuana for personal use will be entitled to a receive $100.00 to resolve this litigation. That money will be used to: 1) compensate Class Members who have been strip searched; 2) pay for notifying Class Members and administering the settlement; 3) pay an incentive award to the named Plaintiff, Kenard Pitney; and 4) pay attorneys' fees and expenses. A complete description of the settlement is provided in the Settlement Agreement. You can get a copy of the Settlement Agreement by visiting **www.cityofchesterstripsearch.com** or by calling **1-866-647-4187.**

### XIII. WHAT CAN I GET FROM THE SETTLEMENT?

The settlement provides that each Class Member, with a Summary as their highest graded offense who submits a timely Claim Form will be entitled to receive $1,000.00. Class Members arrested and housed in the cell block area on a highest graded offense which constitutes a misdemeanor, except those misdemeanors involving drug offenses or violent offenses involving physical harm to an individual or use/possession of a weapon of any kind, who submits a timely Claim Form will be entitled to receive $400.00. Class Members arrested and housed for possession of a small amount of marijuana for personal use will be entitled to a receive $100.00. No Class Member shall be entitled to more than his or her individual share of the Distribution Amount regardless of the number of times he or she has been booked and/or strip searched at the City of Chester Police Department cell block. If a Class Member owes child support, or owe costs or fines owed as a result of an adjudication by any of the Courts of the Commonwealth of Pennsylvania, their payment under this Settlement will be credited towards their child support debt or costs or fines owed.

## HOW YOU GET A PAYMENT - SUBMITTING A CLAIM FORM

### XIV. HOW CAN I GET A PAYMENT?

To qualify for a payment, you **MUST** send in a Claim Form. A Claim Form is attached to this notice. You can also get a Claim Form on the Internet at **www.cityofchesterstripsearch.com**. Read the instructions carefully, fill out the form, sign it, and mail it postmarked or submit it online no later than **July 3, 2021**. It is recommended that you send your Claim Form in by Certified Mail, Return Receipt Requested or some form of overnight delivery that provides a record of delivery.

You may be asked for additional documents. If so, you will be contacted in writing. You may want to send in your Claim Form by Certified Mail, Return Receipt Requested or using the online option, to ensure that it is received by the Settlement Administrator.

### XV. WHEN WOULD I GET MY PAYMENT?

The Court will hold a hearing on **May 17, 2021** to decide whether to approve the settlement.  If Judge Paul Diamond approves the settlement, there may be appeals.  It is always uncertain whether those appeals can be resolved, and resolving them can take time, perhaps more than a year. Everyone who sends in a Claim Form will be informed of the progress of the settlement. Please be patient.

### XVI. WHAT AM I GIVING UP TO RECEIVE A PAYMENT OR STAY IN THE CLASS?

Unless you exclude yourself, you are staying in the Class, and that means you cannot sue, continue to sue, or be part of any other lawsuit against the City of Chester, its employees, or its elected officials about the legal issues in this case. It also means that all the Court's orders will apply to you and legally bind you. If you sign the Claim Form, you will agree to release all claims that you have relating to having been strip searched.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a payment from this settlement, but you want to keep the right to sue or continue to sue the City of Chester on your own about the legal issues in this case, then you must take steps to preserve these rights. This is called excluding yourself – or is sometimes referred to as "opting out" of the Class.

### XVII. HOW DO I GET OUT OF THE SETTLEMENT?

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *Pitney v. City of Chester*.  Be sure to include your name, address, telephone number and your signature. You must mail your exclusion request postmarked no later than **April 19, 2021** to:

> Pitney v. Chester Settlement Administrator
> c/o Rust Consulting, Inc. – 7225
> PO Box 44
> Minneapolis MN 55440-0284

You cannot exclude yourself on the phone or by email. If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement.  You will not be legally bound by anything that happens in this lawsuit.  You may be able to sue (or continue to sue) the City of Chester in the future.

### XVIII.  IF I DO NOT EXCLUDE MYSELF, CAN I SUE THE CITY OF CHESTER FOR THE SAME THING LATER?

No.  Unless you exclude yourself, you give up the right to sue the City of Chester for the claims that this settlement involves. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. You must exclude yourself from *this* class action to continue your own lawsuit. Remember, the exclusion deadline is **April 19, 2021.**

### XIX. IF I EXCLUDE MYSELF, CAN I GET MONEY FROM THE SETTLEMENT?

No.  If you exclude yourself, do not send in a claim form to ask for money. But, you may sue, continue to sue, or be part of a different lawsuit against the City of Chester.

## THE LAWYERS AND INDIVIDUALS REPRESENTING YOU

### XX. DO I HAVE A LAWYER IN THIS CASE?

The Court approved Patrick G. Geckle of The Law Offices of Patrick G. Geckle, LLC, Philadelphia, Pennsylvania; and Alan M. Feldman, Edward S. Goldis, and Andrew K. Mitnick of Feldman Shepherd Wohlgelernter Tanner Weinstock & Dodig, LLP, Philadelphia, Pennsylvania, to represent you and other Class Members. Together, the lawyers are called Class Counsel. You will not be charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

### XXI. HOW WILL THE LAWYERS AND THE CLASS REPRESENTATIVE BE PAID?

Class Counsel will ask the Court for attorneys' fees and expenses not to exceed $275,000, and a payment of $25,000 for the Class Representative, Kenard Pitney.  These amounts will be deducted from the settlement fund before payments are made to Class Members. The costs of administering the settlement will also be deducted from the settlement fund.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the settlement or some part of it.

### XXII. HOW DO I TELL THE COURT THAT I DO NOT LIKE THE SETTLEMENT?

If you are a Class Member, you can object to the settlement if you do not like any part of it.  You can give objections why you think the Court should not approve it.  The Court will consider your views. To object, you must send a letter saying that you object to *Pitney v. City of Chester*.  Be sure to include your name, address, telephone number, your signature, and the reasons why you object to this settlement. Mail the objection to the following addresses postmarked no later than **April 19, 2021.**

Clerk of the Court
U.S. District Court for the Eastern District of Pennsylvania
U.S. Courthouse601 Market Street #2609
Philadelphia, Pennsylvania 19106

Class Counsel:

Patrick G. Geckle
Law Offices of Patrick G. Geckle, LLC
1515 Market Street, Suite 1200
Philadelphia, PA 19102

Alan M. Feldman
Edward S. Goldis
Andrew K. Mitnick
Feldman Shepherd Wohlgelernter Tanner Weinstock & Dodig, LLP
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103

Defendant's Counsel:

David J. MacMain
Brian H. Leinhauser
Andrew J. Davis
MacMain, Connell & Leinhauser, LLC
433 W. Market Street, Suite 200
West Chester, PA 19382

Nicholas Cummins
Bennett, Bricklin, & Saltzburg LLC
1500 Market Street, 32nd Floor
Philadelphia, PA 19103

### XXIII. WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING MYSELF?

Objecting is simply telling the Court that you do not like something about the settlement.  You can object only if you stay in the Class. Excluding yourself is telling the Court that you do not want to be a part of the Class. If you exclude yourself, you have no basis to object because the case no longer legally affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you do not have to do so.

### XXIV. WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?

On **May 17, 2021** at **1:00 p.m**, the United States District Court for the Eastern District of Pennsylvania will hold a fairness hearing in the United States District Court for the Eastern District of Pennsylvania, U.S. Courthouse, 601 Market Street, Philadelphia, Pennsylvania 19106, in a courtroom as scheduled by the Court to determine whether the Class was properly certified and whether the proposed settlement is fair, adequate, and reasonable. The Court will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel. This hearing may be continued or rescheduled by the Court without further notice. We do not know how long it will take the Court to give its decision.

### XXV. DO I HAVE TO COME TO THE HEARING?

No.  Class Counsel will answer questions Judge Paul Diamond may have. But you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not required.

### XXVI. MAY I SPEAK AT THE HEARING?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Pitney v. City of Chester.*"  Be sure to include your name, address, telephone number and your signature. Your Notice of Intention to Appear must be postmarked no later than **April 19, 2021** and be sent to the Clerk of the Court, Class Counsel, and Defense Counsel, at the addresses in question XXII.  You cannot speak at this hearing if you excluded yourself.

## IF YOU DO NOTHING

### XXVII. WHAT HAPPENS IF I DO NOTHING AT ALL?

If you do nothing, you will get no money from the settlement. But, unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the City of Chester about the legal issues in this case, ever again. Unless you exclude yourself, you need to submit a Claim Form to receive a monetary payment under the settlement.

## GETTING MORE INFORMATION

### XXVIII. ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?

This Notice summarizes the proposed settlement.  More details are in a Settlement Agreement.  You can get a copy of the Settlement Agreement by writing to the Settlement Administrator at ***Pitney v Chester Settlement Administrator, c/o Rust Consulting, Inc – 7225, PO Box 44, Minneapolis MN 55440-0044*** or by visiting **www.cityofchesterstripsearch.com**.

### XXIX. HOW DO I GET MORE INFORMATION?

You can call **1-866-647-4187**, write to the Settlement Administrator at ***Pitney v Chester Settlement Administrator, c/o Rust Consulting, Inc – 7225, PO Box 44, Minneapolis MN 55440-0044***, or visit the website at **www.cityofchesterstripsearch.com**, where you will find answers to common questions about the settlement, a Claim Form, plus other information to help you determine whether you are a Class Member and whether you are eligible for payment.

GZJ KDKV'δEö''

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

KENARD PITNEY, on behalf of himself and
all others similarly situated,

        *Plaintiff*,

    v.

CITY OF CHESTER, ET AL.,

        *Defendant*.

Case No. 2:19-cv-00799

**DECLARATION OF ALAN M. FELDMAN SUBMITTED IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES**

I, Alan M. Feldman, declare as follows:

1.     I am a founding partner of the firm of Feldman, Shepherd, Wohlgelernter, Tanner,

Weinstock & Dodig, LLP.  I submit this Declaration in support of the firm's application for an

award of attorneys' fees in connection with services rendered in this case.  My firm, with our co-

counsel Patrick Geckle, Esquire, acted as Class Counsel in this action   I personally handled or

was directly involved in virtually all aspects of this litigation together with my partners Edward

S. Goldis, Esquire and Andrew K. Mitnick, Esquire.  The tasks my firm performed can be

described as follows:

      (a)     drafting Plaintiff's Motion for Leave to Amend the Complaint
               in order to assert a Class Action;

      (b)     drafting the Amended Complaint against defendant, asserting a Class
               Action;

      (c)     preparing a response to defendant's Statement of Undisputed Material
               Facts;

      (d)     opposing defendant's Motion for Summary Judgment;

      (e)     opposing defendant's Motion to Amend Order to Certify for Appeal;

(f)     preparing a Motion to Compel Responses to Plaintiff's Request for Production of Documents;

(g)     preparing a Motion to Extend Scheduling Order Deadlines;

(h)     taking the deposition of Steven Gretsky, Acting Commissioner of the City of Chester Police Department;

(i)     reviewing thousands of pages of documents produced by defendant, including the preparation of Excel spreadsheets to categorize and describe the documents;

(j)     preparing a Mediation Memorandum and attending a mediation before a retired federal judge;

(k)     preparing a Settlement Conference Memorandum and attending a settlement conference before Magistrate Judge Timothy Rice;

(l)     preparing a Motion for Class Certification and a Reply to defendant's Opposition to Class Certification;

(m)     handling negotiations over a period of months with respect to all settlement-related issues;

(n)     reviewing, editing and helping to draft a Motion for Preliminary Approval of Settlement and Provisional Class Certification, including a Settlement Agreement entered into by the parties;

(o)     briefing constitutional issues and negotiating revisions to defendant's strip search policy;

(p)     drafting Plaintiff's Motion for Final Approval of the settlement;

(q)     attending and presenting argument at the final approval hearing, presently scheduled for May 17, 2021.

2.     The schedule of time included in this Declaration at paragraph 5 is a summary of the time and work devoted to this litigation by me, Edward S. Goldis, Andrew K. Mitnick and paralegal Jenna Hough from my law firm, along with the lodestar fee calculations based on current billing rates. The schedule was prepared from records regularly prepared and maintained by my firm. Time expended in preparing this application for fees has not been included in this

request, nor is there any request to include time to be spent at the final approval hearing or other future matters. Further, as part of the Settlement Agreement, my firm does not seek reimbursement of our expenses of litigation, but will instead absorb such expenses.

3.      The hourly rates charged by my firm are the same as or less than current rates charged in other matters handled by my firm and are comparable to hourly rates charged by other attorneys and paralegal professionals with similar experience and skills.

4.      The hourly rate charged by me is $750, which is less than the $800 hourly rate I received in a litigation matter in 2019, and modestly higher than the $700 hourly rate approved by the court in a class action in 2015. The hourly rate for Mr. Goldis is $495, which is commensurate with the hourly rate for attorneys with similar experience approved by courts in other class action cases. The hourly rate for Mr. Mitnick is $495, which is his present rate for actions involving a lodestar computation. The hourly rate for Ms. Hough, a paralegal, is $200. All rates charged by the attorneys and the paralegal from my firm are reasonable and within the range of market rates charged by attorneys and paralegals with comparable experience and skill levels for litigation of a similar nature.

5.      The lodestar of the firm for work performed by my firm in this case is as follows:

|  | HOURLY RATE | HOURS | FEE |
|---|---|---|---|
| Alan M. Feldman | $750 | 222.8 | $167,100.00 |
| Edward S. Goldis | $495 | 214.3 | $106,078.50 |
| Andrew K. Mitnick | $495 | 205.5 | $101,722.50 |
| Jenna Hough, paralegal | $200 | 122 | $24,400.00 |
| TOTAL FEES |  | 764.6 | $399,301.00 |

6.      The lodestar for my firm, without consideration of the lodestar for co-counsel Patrick Geckle, Esquire, is substantially greater than the total attorneys' fee of $275,000, which Class Counsel in this case have agreed to accept and which defendant City of Chester has agreed to not object to a request to the Court for same.

8.      Moreover, Class Counsel undertook this action on a contingent fee basis, assuming a substantial risk that they might not be compensated for their efforts. Further, the pandemic that has existed over the past year further complicated Class Counsel's efforts, interfering with document review, preparing exhibits for depositions, and increasing the risk that resolution of the case would be delayed in the event a jury trial was necessary, since all jury trials were effectively cancelled, with no certainty about when they would resume.

7.      With respect to the standing and reputation of the Feldman Shepherd lawyers involved in this case, attached hereto as Exhibit "A" are brief biographies of me, Mr. Goldis and Mr. Mitnick from the firm's website.

I declare under penalties of perjury that the foregoing statements are true and correct.


05/05/21_____                         _____
DATE                                             ALAN M. FELDMAN
                                                 Attorney for Plaintiff

# EXHIBIT "A"



# Alan M. Feldman
## Co-Managing Shareholder

afeldman@feldmanshepherd.com   |   P (877) 594-5785   |   F (215) 599-1291



## EDUCATION

Temple University Beasley School of Law, J.D. (cum laude), 1976

Temple University, B.A. (magna cum laude), 1973

## ADMISSIONS

Supreme Court of the United States, 1982

U.S. Court of Appeals for the Third Circuit, 1982

Pennsylvania Supreme Court, 1976

Admitted Pro Hac Vice in other states

Alan M. Feldman, Co-Managing Shareholder and one of the founders of Feldman Shepherd, is a dedicated and seasoned trial attorney who has secured many multimillion dollar verdicts and settlements in a wide variety of cases. He has won compensation for the families of children injured or killed by defective consumer products, obtained awards against car and truck manufacturers for failing to design and build vehicles that protect occupants from injury during collisions, and secured recoveries for victims of sexual abuse on college campuses. Alan also has brought successful class action lawsuits against the automotive and medical industries and is one of a small number of trial lawyers who have successfully tried class actions to jury verdict.

Recognized as one of the Top 10 Super Lawyers in Pennsylvania every year since 2010, Alan was ranked as the number two Super Lawyer in Pennsylvania (from more than 50,000 lawyers in the Commonwealth) in 2016, 2017 and 2018. In 2019, he was ranked as the number three Super Lawyer in Pennsylvania. He has also been a Top 100 Super Lawyer in Philadelphia every year since 2007 and has been selected for inclusion among the Best Lawyers in America by U.S. News & World Report since 2013. He is one of a select number of trial lawyers to be certified as a Civil Trial Specialist by the National Board of Trial Advocacy and is also a Fellow of the International Academy of Trial Lawyers (limited to 500 active lawyers throughout the United States). A past president of The Philadelphia Trial Lawyers Association, Alan received the Association's 38th annual Justice Michael A. Musmanno Award in 2017, the highest honor bestowed upon any Philadelphia trial lawyer.

In 2006, Alan was elected by his fellow attorneys to serve as Chancellor of the Philadelphia Bar Association and its 13,000 members. During his tenure, he created the "Raising the Bar" campaign, which helped raise millions of dollars from Philadelphia law firms to provide free

legal services to those in need. More recently, Alan was appointed by the Supreme Court of Pennsylvania to serve on the IOLTA Board, which supports legal services agencies throughout the Commonwealth. He presently is Vice-Chair of the IOLTA Board.

A frequent speaker at continuing legal education programs for other attorneys, Alan has also served as an Adjunct Professor of Trial Advocacy at Temple University School of Law, published materials for more than 60 trial skills programs and co-authored a textbook on premises liability law.

While practicing law, managing his law firm, and serving his community fills Alan's professional life, his proudest accomplishment is raising two talented and successful daughters with his wife, Dr. Maureen Pelta, a Professor of Art History for more than 25 years at Moore College of Art and Design. A dedicated runner, Alan has participated in virtually all of the annual races sponsored by the Philadelphia Bar Association since 1979, although he will admit that he is not quite as speedy as he used to be.

Alan, a Temple University School of Law graduate, is licensed to practice in Pennsylvania, the Supreme Court of the United States, and the U.S. Court of Appeals for the Third Circuit. He has also been admitted pro hac vice to represent clients in other states.

---

Feldman Shepherd Wohlgelernter Tanner Weinstock Dodig LLP attorneys are licensed in Pennsylvania, New Jersey, New York, North Carolina, Florida, Louisiana, Missouri, and Texas. In addition, our attorneys practice in other states on a pro hac vice basis. Pro hac vice admission is when a lawyer not licensed in a particular state associates with a lawyer who is licensed in that state and obtains the court's permission to jointly represent a client in a specific matter.



# Edward S. Goldis

### Partner

egoldis@feldmanshepherd.com   |   P (877) 594-5785   |   F (215) 567-8333



## EDUCATION

Villanova University School
of Law, 2001

## ADMISSIONS

Pennsylvania, 2001

New Jersey, 2001

U.S. District Court, Eastern
District of Pennsylvania,
2003

Since joining Feldman Shepherd in 2005, Edward Goldis has represented victims of catastrophic injuries from automobile, construction, and workplace accidents. Ed has also handled cases involving medical malpractice claims and has a successful history in product liability cases. A dedicated and assertive trial lawyer, Ed has helped secure numerous seven and eight-figure recoveries, including a $50 million settlement for the families of three toddlers who were fatally injured by Ikea dresser tip-over, $26.1 million settlement in a tractor-trailer accident case, believed to be one of the largest personal injury settlements ever reported in Pennsylvania. He has also helped secure multimillion dollar results in cases involving obstetric and delivery malpractice, industrial machinery and automobile defect, and class action cases.

After being named a Super Lawyers Rising Star by Thomson Reuters for eight of the last nine years (2005—2013), Ed has been recognized as a Super Lawyer in Pennsylvania consistently since 2014. He has also been selected as a member of The National Trial Lawyers, a professional organization comprising America's top trial attorneys. In addition to these honors, Ed is a member of the Philadelphia Trial Lawyers, the Pennsylvania Association for Justice, and the Philadelphia Bar Association.

Ed received his undergraduate degree from Syracuse University and his law degree from Villanova University School of Law and is licensed to practice in Pennsylvania, New Jersey, the U.S. District Court for the  Eastern and Western District of Pennsylvania, the U.S. Bureau of Court of the District of New Jersey and the U.S. Supreme Court.

When he's not working, Ed spends time with his wife and two young daughters at one of their many activities.



# Andrew K. Mitnick

## Partner

amitnick@feldmanshepherd.com  |  P (877) 594-5785  |  F (215) 567-8333



## EDUCATION

Case Western Reserve University School of Law, 1997

Temple University Beasley School of Law, visiting student, 1996-1997

Franklin & Marshall College, 1994

## ADMISSIONS

United States Supreme Court, 2010

Eastern District of Pennsylvania, 2001

Pennsylvania, 1997

New Jersey, 1997

Federal District Court of New Jersey, 1997

Andrew K. Mitnick has spent the past 18 years litigating cases across Pennsylvania and New Jersey involving medical malpractice, nursing home abuse and neglect, and complex litigation matters resulting in catastrophic injuries. He also handles cases around the country on a pro hac vice basis, including Florida, Illinois, New York, and Ohio.

When not at the office, Andrew and his wife are active in their community, particularly its school system. Andrew enjoys spending time with students and explaining his love of the practice of law; he commits time each year to work with 8th grade middle school students during their Constitutional Law unit in Social Studies. The rest of Andrew's time is spent with his three beautiful daughters, bouncing around between dance classes, gymnastics, and cheerleading.

After graduating from Franklin & Marshall College, Andrew earned his law degree from Case Western Reserve University School of Law. He spent his third year of law school at Temple University Beasley School of Law as a visiting student. Andrew is admitted to practice in Pennsylvania, New Jersey, the U.S. District Court for the Eastern District of Pennsylvania, the Federal District Court of New Jersey, and the U.S. Supreme Court. He has also been admitted pro hac vice to represent clients in other states.

## AFFILIATIONS
· Philadelphia Bar Association Member

· Philadelphia Trial Lawyers Association Member

· Pennsylvania Association for Justice Member

# EXHIBIT "D"

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

KENARD PITNEY, on behalf of himself and
all others similarly situated,

        *Plaintiff*,

   v.

CITY OF CHESTER, ET AL.,

        *Defendant*.

Case No. 2:19-cv-00799

**DECLARATION OF PATRICK G. GECKLE SUBMITTED IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES**

I, Patrick G. Geckle, declare as follows:

1.     I have been licensed to practice law in Pennsylvania since 1977.  I have been actively practicing law for 43 years.

2.     I am admitted to practice before the Supreme Court of Pennsylvania, the United States District Court for the Eastern District of Pennsylvania, the United State Court of Appeals for the Third Circuit and the Supreme Court of the United States.

3.     I have litigated over 125 civil rights cases including litigating cases in the Eastern, Middle and Western District of Pennsylvania, the United States District Court for the District of New Jersey and the United States District Court for the District of Delaware.

4.     I have been a presenter in multiple continuing legal education seminars on the subject of Section 1983 litigation.

5.     I am an active member of the Eastern District of Pennsylvania's Prisoner Civil Rights Panel.

6.      I am an active member of the National Police Accountability Project, a
nationwide organization of attorneys who litigate civil rights cases on behalf of victims of police
misconduct and prisoners who have been deprived of their constitutional rights.

7.      I was counsel to Amicus Appellant, the National Police Accountability
Project, in the case <u>Fields v. City of Philadelphia</u>, 862 F.3d 353 (2017) and co-authored the
Amicus Brief in support of a citizen's First Amendment right to film the police.  The Third
Circuit's precedential opinion recognized this right and, in their opinion, referred to the Amicus
Brief filed on behalf of the National Police Accountability Project multiple times.

8.       My rate for attorney's fees given my experience and success is $500.00 per
hour.

9.       I personally handled or was directly involved in all aspects of this litigation.
The tasks I performed included, but was not limited to, the following:

(a)      Meeting with Plaintiff Kenard Pitney, obtaining case history,
         discussions and /or correspondence with liability manager from
         Harrah's Casino and Assistant Solicitor of the City of Chester.

(b)      Extensive research on the viability of making a claim alleging an
         illegal strip search in light of the Supreme Court decision in
         <u>Florence v. Board of Chosen Freeholders</u>.

(c)      Multiple conferences with the Plaintiff.

(d)      Drafting the complaint.

(e)      Conducting discovery in the underlying case which included
         preparing Interrogatories and document requests, preparing
         responses to discovery requests, preparation for and attending
         five depositions.

(f)      Responding to Defendants' Motion for Summary Judgment which
         included review of all discovery material to respond to Defendants'
         Statement of Facts, extensive research of the law, researching the
         search policies of over 10 law enforcement agencies, National Police
         Organizations and National Jail Standards and writing the response to

the Motion for Summary Judgment.

(g)    Researching and responding to Defendants' Motion to Certify for Appeal.

(h)    Assist with class discovery including reviewing thousands of pages of documents and attending the deposition of Defendants' designee.

(i)    Participate in mediation.

(j)    Participate in a settlement conference before the Honorable Timothy Rice.

(k)    Negotiate a new, constitutional, strip search policy with the City of Chester.

(l)    Assist in the preparation of motions to obtain approval of the settlement of this class action.

(m)    Attend final approval hearing.

10.    The lodestar for work performed by myself to complete the above-described tasks is as follows:

| Hourly Rate | Hours | Fee |
|---|---|---|
| $500.00 | 284.4 | $142,200.00 |

11.    I am making no claim for the costs of litigation expended by my firm.

12.    Due to my experience in civil rights cases, I expended fewer hours than an attorney not familiar with Section 1983 litigation.  The above hours were calculated from contemporaneous records and can be made available to the court upon request.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 4, 2021          **PATRICK G. GECKLE, LLC**


By: /s/ Patrick G. Geckle
Patrick G. Geckle
Attorney ID No. 26718
1515 Market Street, Ste. 1200
Philadelphia, PA  19102
(215) 735-3326 - phone
(215) 689-2803 - fax
Email: pgeckle@pgglaw.com

Counsel for Plaintiff

<u>**CERTIFICATE OF SERVICE**</u>

I, Alan M. Feldman, Esquire of Feldman Shepherd Wohlgelernter Tanner Weinstock & Dodig, LLP, hereby certify that on this date I served Plaintiff's Motion for Final Approval of Class Action Settlement, for an Award of Attorneys' Fees and for Approval of Incentive Award to the Class Representative upon the persons and in the manner indicated below, which service satisfies the requirements of the U.S. District Court for the Eastern District of Pennsylvania.  A true and correct copy of the same was filed electronically and is available for viewing and downloading from the ECF system to:

> Nicholas A. Cummins, Esquire
> Bennett, Bricklin & Saltzburg, LLC
> 1601 Market Street, 16th Floor
> Philadelphia, PA  19103
>
> David J. MacMain, Esquire
> Brian H. Leinhauser, Esquire
> MacMain, Connell & Leinhauser, LLC
> 433 W. Market Street, Suite 200
> West Chester, PA  19382

> FELDMAN SHEPHERD WOHLGELERNTER
> TANNER WEINSTOCK & DODIG, LLP
>
>
> _____
> ALAN M. FELDMAN
> Counsel for Plaintiff

DATED:  May 10, 2021

1