IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENARD PITNEY, | : |
|          Plaintiff, | : |
| | : |
| v. | :   Civ. No. 19-799 |
| | : |
| CITY OF CHESTER, | : |
|          Defendant. | : |
| | : |

## ORDER

The Parties in this civil rights class action seek final approval of their proposed Settlement Agreement, and Class Counsel seek attorneys' fees and an incentive award to Class Representative Pitney. I will grant these requests.

**I.    FACTUAL BACKGROUND**

Plaintiffs are individuals who were arrested by Chester Police and subjected to strip searches at the Chester Police Station. (Am. Compl., Doc. No. 37.) Chester's policy required that Police conduct strip searches whenever "[a]ny person" was charged by the Chester Police "with a violation of law which will require that person to be placed in a locked cell or hav[e] contact with others in custody." (Summ. J. Mem. at 6, Doc. No. 33.) In practice, this policy sometimes resulted in highly intrusive searches that served no legitimate law enforcement or security interest. (Id. at 17.) Chester Police strip searched Class Representative Pitney, who was a non-drug summary offender, neither violent nor belligerent, had already been patted down by Police, and who was to be held only briefly, alone, in a Station cell. (Id. at

16-17.) Plaintiffs contend that Defendant thus violated their Fourth Amendment rights to be free from unreasonable searches and seizures.

In their Amended Complaint, Plaintiffs set forth the following counts:

<u>Count 1</u>: violations of the Fourth Amendment, 42 U.S.C. § 1983;

<u>Count 2</u>: state constitutional and negligent and intention infliction of emotion distress claims;

<u>Count 3</u>: demand for a declaratory judgment that Chester's strip search policy is unconstitutional; and

<u>Count 4</u>: demand for injunctive relief compelling Chester to cease the unconstitutional practices pursuant to the strip search policy.

(Am. Compl.)

## II. PROCEDURAL BACKGROUND

On February 25, 2019, Pitney instituted this action against the City of Chester and others, alleging that he was unlawfully strip searched following an arrest for public drunkenness, despite the absence of reasonable suspicion that he was in possession of contraband or a weapon. (Comp., Doc. No. 1.) Plaintiff stipulated to proceed with a <u>Monell</u> claim against the City of Chester only (limited to its strip search policies) and dismissed all other Defendants. (Doc. Nos. 6, 9.) On October 3, 2019, Plaintiff filed a motion seeking leave to amend the Complaint to assert a Class Action. (Doc. No. 14.) On October 30, 2019, the City of Chester filed a

Motion for Summary Judgment. (Doc. No. 19.) On May 20, 2020, I denied Chester's Motion and, on May 27, 2020, I granted Plaintiff's Motion for Leave to File an Amended Complaint setting forth a Class Action. (Doc. Nos. 34, 36.)

On January 27, 2021, the Parties submitted a proposed Settlement Agreement, which I preliminarily approved on February 3, 2021. (Doc. Nos. 74, 75.) Notice was sent to 1,010 Class Members on March 5, 2021. (Doc. No. 76.) As of May 17, 51 claim forms had been received. Plaintiffs' Counsel now move for attorneys' fees, and final approval of the Settlement. (Doc. No. 76.) I held a Final Fairness Hearing via videoconference on May 17, 2021. (Doc. No. 77.)

### III. DISCUSSION

#### a. Proposed Settlement

Under the Agreement, Defendants will pay up to $523,400 to the Class; the specific amounts awarded to each Member will be: $1,000 for those arrested for summary offenses; $400 for those arrested for misdemeanor offenses; and $100 for those arrested for possessing a small amount of marijuana for personal use. If a Class Member owes child support, or costs or fines owed as a result of an adjudication by any of the Courts of the Commonwealth of Pennsylvania, that Member's payment under the Settlement will be credited toward their child support, debt, or costs or fines owed.

Defendant has committed to pay all costs of administering the settlement and has agreed not to oppose Class Counsel's application for an award of counsel fees not to exceed $275,000. Defendant has also consented to a payment of $25,000 to Class Representative Kenard Pitney. Class Counsel have agreed to bear all costs and expenses they have incurred in this litigation, and so will not seek reimbursement of such expenses.

### b. Rule 23(e)

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "While the law generally favors settlement in complex or class action cases for its conservation of judicial resources, the court has an obligation to ensure that any settlement reached protects the interests of the class members." In re Aetna Inc. Sec. Litig., MDL No. 1219, 2001 WL 20928, at *4 (E.D. Pa. Jan 4, 2001) (citing In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig., 55 F.3d 768, 784 (3d Cir. 1995)).

### c. Fairness, Adequacy, and Reasonableness of Proposed Settlement

I must determine that the settlement is "fair, reasonable, and adequate." In re Gen. Motors, 55 F.3d at 782. Fairness is presumed when: "(1) the negotiations occurred at arms length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the

4

class objected." In re Cendant Corp. Litig., 264 F.3d 201, 233 n.18 (3d Cir. 2001). That presumption applies here, where (as discussed further below) the negotiations were at arms length, there was substantial discovery, Class Counsel are experienced in similar litigation, and no Class Member has objected.

### The *Girsh* Factors

In determining whether the settlement is fair, reasonable, and adequate, I must evaluate:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

Id. (citing Girsh v. Jensen, 521 F.2d 153, 157 (3d Cir. 1975)).

These factors weigh in favor of approving the Proposed Settlement.

*Factor One: Complexity and Duration*

This action is quite complex, triggering difficult issues relating to the merits and class certification. If I certified, a lengthy and expensive trial would follow, requiring testimony from many police officers, those strip searched, and expert witnesses on liability and damages. An appeal could well follow class certification and any trial disposition. Avoiding this unnecessary expenditure of time and

resources clearly benefits all Parties.  See In Re General Motors Pick-Up Truck Fuel Tank Products Liab. Litig., 55 F.3d 768, 812 (3d Cir. 1995).

The first Girsh factor thus weighs in favor of approving the Settlement.

*Factor Two: Reaction of the Class to the Settlement*

"In an effort to measure the class's own reaction to the settlement's terms directly, courts look to the number and vociferousness of the objectors. Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'" In re Gen. Motors, 55 F.3d at 812 (quoting Bell Atlantic Corp. v. Bolger, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993)).

Here, no Class Member has objected to the Proposed Settlement.  This factor thus supports approval.  See Bodnar v. Bank of America, N.A., 2016 WL 4582084, at *3 (E.D. Pa. 2016); Ripley v. Sunoco, Inc., 287 F.R.D. 300, 312 (E.D. Pa. 2012).

*Factor Three: Stage of the Proceedings*

I must next examine "whether counsel had an adequate appreciation of the merits of the case before negotiating." In re Gen. Motors, 55 F.3d at 813–14.  The proceedings must have produced "sufficient evidence to conduct meaningful, arms length negotiations reflecting the relative strengths of the claims." Mehling v. New York Life Ins. Co., 248 F.R.D. 455, 460 (E.D. Pa. 2008).

Discovery was substantial, including: serving and responding to interrogatories and document requests; reviewing thousands of documents and

6

preparing spreadsheets to evaluate the data yielded; and conducting multiple depositions. There was full briefing on both the Summary Judgment Motion and on the Motion for Leave to Amend, as well as motion practice related to discovery. The Parties attended a voluntary mediation before retired Federal Judge Stephen M. Orlofsky. That mediation was not successful, but a subsequent settlement conference conducted by Magistrate Judge Timothy R. Rice helped significantly to narrow remaining differences. After extended discussions over the succeeding months, settlement was reached. By then, the Parties were able fully to assess the evidence and the strengths and weaknesses of their positions. Bonett v. Education Debt Services, Inc., 2003 WL 21658267 (E.D. Pa. 2003). This factor thus supports approval.

*Factors Four, Five, and Six: The Risks of Establishing Liability and Damages and Maintaining Class Action Status Through Trial*

Here, I must "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." In re Warfarin, 391 F.3d at 537.

Class Counsel acknowledge that Plaintiffs would have faced risks on class certification and on the merits. Significantly, "the damages claims did not involve any pecuniary loss and essentially represented the emotional reaction to a strip search which was completed in a matter of minutes." (Doc. No. 76.)

7

Because the litigation presented significant risks to Plaintiffs, factors four through six weigh in favor of approval.

*Factor Seven: Ability of the Defendants to Withstand a Greater Judgment*

Here, I consider "whether the defendant could withstand a judgment for an amount significantly greater than the settlement." In Re Cendant Corp. Litigation, 264 F.3d 201, 240 (3d Cir. 2001). As the City of Chester has been placed into receivership in proceedings initiated by the Commonwealth of Pennsylvania, it seems unlikely that Defendant could withstand a significantly more costly judgment than that agreed to here. (Doc. No. 76.)

*Factors Eight and Nine:  Range of Reasonableness of the Settlement in Light of the Best Recovery and All the Attendant Risks of Litigation*

"The last two Girsh factors evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case. The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." In re Warfarin, 391 F.3d at 538.

The Settlement Agreement provides significant compensation to Class Members, comparable or greater than in similar cases, without litigation risks. Further, the Settlement spares Class Members the need to testify at trial about the

indignities that they suffered.  See Kelly v. Bus. Info. Grp., Inc., No. CV 15-6668, 2019 WL 414915, at *13 (E.D. Pa. Feb. 1, 2019).

### D. Fairness, Reasonableness, and Adequacy of Plan of Distribution

The Plan of Allocation must also be fair, reasonable, and adequate.  Ikon, 194 F.R.D. 166 at 184.  "Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable."  In re Aetna Inc., 2001 WL 20928, at *12 (E.D. Pa. Jan. 4, 2001).

Here, funds will be distributed according to the type of offense for which Chester Police arrested each Class Member, with recovery amounts ranging from $100 to $1000.  I find this Plan of Allocation to be fair, reasonable, and adequate.  It appropriately compensates Class Members based on the differing circumstances in which strip searches were conducted.

### E. Fairness and Reasonableness of Requested Counsel Fees and Class Representative Service Award

Plaintiffs seek $275,000 for Class Counsel and a $25,000 incentive payment to Class Representative Pitney.

I "must conduct a 'thorough judicial review' of class counsels' request for attorneys' fees."  Good v. Nationwide Credit, Inc., 314 F.R.D. 141, 161 (E.D. Pa. 2016) (quoting Perry v. FleetBoston Fin. Corp., 229 F.R.D. 105, 118 (E.D. Pa. 2005)).  Any fees I award must be "reasonable."  Fed. R. Civ. P. 23(h).

"There are two basic methods for calculating attorneys' fees—the percentage-of-recovery method and the lodestar method." In re Prudential, 148 F.3d at 333. In a common fund case such as this one, the percentage-of-recovery method is preferred; the lodestar method is an appropriate cross check. Id.

In determining the reasonableness of a percentage fee award, I must examine factors that the Third Circuit set out in Gunter and Prudential:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement[.]

In re Diet Drugs, 582 F.3d 524, 541 (3d Cir. 2009) (citing Gunter v. Ridgewood Energy Corp., 223 F.3d 190 (3d Cir. 2000), and In re Prudential, 148 F.3d at 283) (internal citations omitted)).

Because many of these factors overlap with the Settlement approval factors I have discussed, I will address them briefly.

First, the size of the fund is reasonable. The Settlement provides for a fund of up to $523,400 for a Settlement Class consisting of 1,010 individuals, distributed as I have explained. The payments to Class Members are substantial and consistent

10

with or greater than payments in comparable Class Actions. This factor thus weighs in favor of granting the fee request. See, e.g., Erie County Retirees' Ass'n v. County of Erie, 192 F. Supp. 2d 369, 381 (W.D. Pa. 2002)

Second, as I have discussed, there are no objections in this case. The attorneys involved have shown skill and efficiency, as I noted at the Final Fairness Hearing. Third, as I have discussed, the complexity and duration of this litigation weighs in favor of approving the fees sought by counsel. Fourth, because Class Counsel operated on a contingency fee basis, there was a risk of nonpayment. See In re Schering-Plough, 2012 WL 1964451, at *7. Fifth, Class Counsel devoted significant time to this case: 1,049 hours in attorney and paralegal time. Sixth, the 33% fee is reasonable in light of the fees awarded in comparable cases. Potoski v. Wyoming Valley Health Care Syst., 2020 WL 207061, at *6 (M.D. Pa. 2020) ("[T]he Third Circuit has awarded fees ranging from 20% to 45% of the settlement value."); Smith v. Dominion Bridge Corp., 2007 WL 1101272 (E.D. Pa. April 11, 2007) (approving fee award equal to 33.3% of $750,000 settlement fund); In re Ravisent Tech., Inc. Securities Litig., 2005 WL 906361 at *10-12 (E.D. Pa. Apr. 18, 1). The settlement fund consists of $523,400 for the claims of Class Members, $25,000 for an incentive payment to Mr. Pitney and $275,000 in counsel fees, as well as costs generated by administration of the settlement. Eighth, there are no other groups involved in this case that expended efforts. Ninth, Class Counsel may have negotiated a higher

11

percentage fee if the case had been subject to a private contingent fee arrangement. Esslinger v. HSBC Bank Nevada, N.A., 2012 WL 5866074, at *14 (typical contingency agreements are between 30%-40% of recovery). Tenth and finally, although the Settlement is generally straightforward, the absence of an innovative element does not defeat approval. Id.

### Lodestar Calculations

I will heed the Third Circuit's suggestion to cross-check the percentage award against the lodestar method. Gunter, 223 F.3d at 199. "[A] court determines the lodestar by multiplying the number of hours counsel reasonably worked on a client's case by a reasonable hourly billing rate for such services in a given geographical area provided by a lawyer of comparable experience."

Class Counsel have reasonably calculated a lodestar of $541,501. (Doc. No. 76.) Given that the fee requested is substantially *below* the lodestar amount here, that weighs in favor of approval.

In sum, I find Class Counsel's requested $275,000 fee award to be reasonable.

### Incentive Payment

The Parties propose a $25,000 payment to Class Representative Pitney.

"Incentive payments may be approved to compensate class representatives for services they provide and risks they incur during the course of litigation as well as

12

to reward the members for the benefit they provide to the class and to the public." Galt v. Eagleville Hospital, 310 F. Supp. 3d 483, 496 (E.D. Pa. 2018).

Mr. Pitney devoted significant time and energy to this litigation, including giving deposition testimony and frequently consulting with Class Counsel. Mr. Pitney's deposition included highly personal and potentially embarrassing matters. In these circumstances, the proposed incentive payment is reasonable. See Pfeifer, 2018 WL 4203880, at *14–15.

## IV. CONCLUSION

I will approve the Settlement, which is fair, adequate, and reasonable. I will also approve Class Counsel's request for attorneys' fees, expenses, and incentive payments. An appropriate Judgment follows.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
_____

May 18, 2021                              Paul S. Diamond, J.